UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

STEVEN TILCHEN,

Case No.: 1:17-CV-00051 (PAC)

Plaintiff,

Hon. Paul A. Crotty

-against-

CEMD ELEVATOR CORP. d/b/a CITY ELEVATOR,
MITCHELL HELLMAN, STEPHAN DIEMER, CARL
ALONGIS and KONE, INC.,

Defendants.

----------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND PLAINTIFF'S SECOND AMENDED COMPLAINT

CERTILMAN BALIN ADLER & HYMAN, LLP
*Attorneys for Plaintiff*
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
(516) 296-7000

Of Counsel:
Douglas E. Rowe, Esq.
Paul A. Pagano, Esq.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .............................................................................................2

PERTINENT PROCEDURAL HISTORY.......................................................................4

ARGUMENT................................................................................................................10

I. LEGAL STANDARD ...............................................................................................10

II.  THERE HAS BEEN NO UNDUE DELAY IN SEEKING TO AMEND...................12

III. PLAINTIFF'S INSTANT MOTION IS NOT MADE IN BAD FAITH
     NOR DOES IT STEM FROM A DILATORY MOTIVE...........................................13

IV. PLAINTIFF HAS NOT REPEATEDLY FAILED TO CURE
     DEFICIENCIES BY AMENDMENTS PREVIOUSLY ALLOWED ........................14

V.  DEFENDANTS WILL NOT BE PREJUDICED BY PLAINTIFF'S
     PROPOSED AMENDMENTS.................................................................................15

VI. PLAINTIFF'S PROPOSED AMENDMENTS ARE NOT FUTILE..........................18

CONCLUSION.............................................................................................................21

6582430.1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Agerbrink v Model Serv. LLC*,
  155 F. Supp. 3d 448 (S.D.N.Y. 2016)......................................................................................15

*Catapano v W. Airlines, Inc.*,
  105 FRD 621 (E.D.N.Y. 1985).................................................................................................13

*E\*Trade Fin. Corp. v Deutsche Bank AG*,
  420 F. Supp. 2d 273 (S.D.N.Y. 2006)................................................................................11, 12

*Foman v Davis*,
  371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).........................................................11, 12

*Gemerek v Buffalo Sewer Auth.*,
  99-CV-879S, 2008 WL 11363255 (WDNY Mar. 31, 2008).....................................................14

*K. Bell & Assoc., Inc. v Lloyd's Underwriters*,
  827 F. Supp. 985 (S.D.N.Y. 1993) ......................................................................................4, 18

*Lampert v Pace Univ.*,
  94CIV.3467(KTD)(RLE), 1996 WL 453060 (S.D.N.Y. Aug. 12, 1996)..................................14

*McCoy v Goldberg*,
  845 F. Supp. 155 (S.D.N.Y. 1994) ..........................................................................................13

*Polanco v NCO Portfolio Mgt., Inc.*,
  23 F. Supp. 3d 363 (S.D.N.Y. 2014)........................................................................................18

*Rachman Bag Co. v Liberty Mut. Ins. Co.*,
  46 F.3d 230 (2d. Cir. 1995)...............................................................................................11, 12

*Resorts and Motel Advancement Dev. Agency, Ltd. v Sloan*,
  160 F.R.D. 449 (S.D.N.Y. 1995)..............................................................................................13

*Safeco Ins. Co. of Am. v Discover Prop. and Cas. Ins. Co.*,
  05 CIV 8625 (DC), 2008 WL 318314 (SDNY Feb. 6, 2008)...................................................13

*State Teachers Retirement Bd. v Fluor Corp.*,
  654 F.2d. 843 (2d. Cir. 1981)............................................................................................15, 16

*Termer v Clark Equip. Co.*,
32 Fed R Serv 2d 1323, 1981 WL 380662 (W.D.N.Y. 1981) ...........................................12, 13

*Urban Box Off. Network, Inc. v Interfase Managers*,
L.P., 232 FRD 169, 172 (S.D.N.Y. 2004) ................................................................................15

*Xerox Corp. v Media Scis. Intern., Inc.*,
511 F. Supp. 2d 372 (S.D.N.Y. 2007)......................................................................................11

**State Statutes**

NYLL § 191 (c) ...........................................................................................................19, 20

NYLL § 663 (1) ....................................................................................................................21

**Rules**

F.R.C.P. 12 (b)(6) ........................................................................................................16, 18, 19

F.R.C.P. 15 (a)(1)...................................................................................................................10

F.R.C.P. 15 (a)(2)............................................................................................................10, 11

F.R.C.P. 16 (b) ......................................................................................................................11

## PRELIMINARY STATEMENT

Plaintiff Steven Tilchen ("Plaintiff") worked as a commission salesman for Defendants CEMD Elevator Corp. d/b/a City Elevator ("City Elevator") Mitchell Hellman ("Hellman"), Stephan Diemer ("Diemer") and Carl Alongis ("Alongis")(collectively the "CEMD Defendants") for approximately thirteen (13) years.[1] Pursuant to an agreement between Plaintiff and the aforesaid Defendants, in addition to his base salary, Plaintiff was to be paid commissions in connection with his sale of elevator maintenance, repair, modernization and new installation contracts at varying rates set by Hellman, President of City Elevator ("Commission Agreement"). Rowe Declaration, Exhibit A, p. 9-10, ¶ 82; Exhibit B; Tilchen Declaration, p. 2-3, ¶¶ 8, 9. Notwithstanding Plaintiff's near decade and a half of service, and the fact that Plaintiff generated literally millions of dollars in revenue for the CEMD Defendants, the CEMD Defendants have failed to pay Plaintiff in excess of $1,000,000 in earned commissions. *See* Rowe Declaration, Exhibit C; Tilchen Declaration p. 3-4, ¶¶ 10, 12.

Plaintiff's instant motion seeks nothing more than to amend his extant complaint to formally add a breach of contract cause of action against the CEMD Defendants and to clarify a few previously pled allegations. Rowe Declaration, Exhibits D & E. Given the liberal policy concerning amending embodied in Federal Rule of Civil Procedure ("F.R.C.P.") 15(a), and the fact that the CEMD Defendants will not be prejudiced by the proposed amendments as: (1) all of the essential allegations that comprise a breach of contract claim were pled in Plaintiff's initial complaint (and in the amended complaints thereafter)[2] and (2) that substantial discovery has

---

[1] *See* Exhibit A to the April 17, 2018 Declaration of Douglas E. Rowe ("Rowe Declaration"), p. 9-10, ¶¶ 75, 82 and April 17, 2018 Declaration of Steven Tilchen ("Tilchen Declaration"); p. 4, ¶ 13.

[2] Rowe Declaration, Exhibits A, F, G.

6582430.1

been conducted on the Commission Agreement,[3] Plaintiff's instant motion should be granted in its entirety.[4]

## STATEMENT OF FACTS

Plaintiff has worked in the elevator industry for almost thirty (30) years. Tilchen Declaration, p. 1, ¶ 3. For virtually all of that time, Plaintiff, like his father before him, was a commission salesperson. Tilchen Declaration, p. 1, ¶ 3. Indeed, it was Plaintiff's father who taught Plaintiff to keep logs of all of Plaintiff's sales. Rowe Declaration, Exhibit C; Tilchen Declaration, p. 1, ¶ 4.

Around 2003, Plaintiff began working for the CEMD Defendants. Rowe Declaration, Exhibit A, p. 9, ¶ 75; Tilchen Declaration, p. 1, ¶ 5. Prior to doing so however, Plaintiff and Hellman sat down in Plaintiff's house and put together Plaintiff's compensation package. Rowe Declaration, Exhibit A, p. 9-10, ¶ 82; Exhibit B; Tilchen Declaration, p. 2, ¶ 6. The compensation package, embodied in a writing by Hellman, President of City Elevator, provided that in addition to a base salary of $1,350 per week and a car allowance, Plaintiff was to earn commissions in connection with his sale of elevator maintenance, repair, modernization and new installation contracts. Rowe Declaration, Exhibit A, p. 9-10, ¶ 82; Exhibit B; Tilchen Declaration, p. 2, ¶¶ 7, 8. Specifically:

- For the sale of maintenance contracts: (i) I was to earn eight (8) percent of the annual value of the contract for contracts less than 5 years in length; (ii) for contracts that were precisely five years in length, I was to earn ten (10) percent of the annual value of the contract (consisting of the original 8% and an additional 2%); (iii) for contracts that exceeded five years in length, I was to earn an additional one (1) percent of the annual value of the contract per

---

[3] Rowe Declaration Exhibits I, K, L, M, N, O, P, Q and R.

[4] During the parties' March 22, 2018 conference with the Court, the Court advised that a pre-motion conference was not necessary in connection with Plaintiff's instant motion.

year (e.g. for a 6 year contract I would earn 11 percent of the annual value of the contract in commissions while for a 7 year contract I would earn 12 percent); and (iv) the foregoing figures were to double if I met a sales plan to be provided by the CEMD Defendants;

- For the sale of repair contracts, I would earn three (3) percent of the value of the contract up to the sales plan to be provided by the CEMD Defendants and six (6) percent of the value of the contract once the sales plan was exceeded; and

- For the sale of modernization and new installation contracts, I would earn one (1) percent of the value of the contract up to the sales plan to be provided by the CEMD Defendants and two (2) percent of the value of the contract once the sales plan was exceeded.

Rowe Declaration, Exhibit B.

Over the course of the next 13 years, Plaintiff sold literally millions of dollars of maintenance, repair, modernization and new installation contracts. Rowe Declaration, Exhibit C; Tilchen Declaration, p. 3, ¶ 10. Despite the staggering amount of revenue Plaintiff generated for the CEMD Defendants, they never paid Plaintiff the full commissions he was owed. Rowe Declaration, Exhibit A, p. 11, ¶ 98; Tilchen Declaration, p. 3, ¶ 11. Instead, the CEMD Defendants adopted two measures in an attempt to appease Plaintiff. Tilchen Declaration, p. 3, ¶ 11. First, from time to time, the CEMD Defendants would pay Plaintiff commissions via one-off checks. Rowe Declaration, Exhibit H; Tilchen Declaration, p. 3, ¶ 11. Second, in an effort to pay down Plaintiff's ever-expanding amount of commissions owed, the CEMD Defendants began paying Plaintiff $6,000 per month towards his previously earned commissions. Tilchen Declaration, p. 3, ¶ 11. Notwithstanding the two foregoing remedial measures, by the time

3

6582430.1

Plaintiff began working for Defendant Kone, Inc. ("Kone") in or about September 2016,[5] the CEMD Defendants owed Plaintiff in excess of $1,000,000 in earned commissions.[6] Tilchen Declaration, p. 3-4, ¶ 12.

## PERTINENT PROCEDURAL HISTORY

On or about January 4, 2017, Plaintiff filed his initial complaint in this action. Rowe Declaration, Exhibit F. Said complaint contained seven causes of action as follows: (1) unlawful deductions from payroll in violation of the Fair Labor Standards Act ("FLSA")(based on Defendants' failure to pay Plaintiff's earned commissions); (2) failure to pay earned commissions in violation of New York Labor Law ("NYLL"); (3) failure to pay overtime in violation of the FLSA; (4) failure to pay overtime in violation of the NYLL; (5) notice and record keeping violations pursuant to NYLL; (6) conversion; and (7) unjust enrichment. Rowe Declaration, Exhibit F, p. 9-16.

While the foregoing were the formally pled causes of action, the original complaint contained all of the elements of a cause of action for breach of contract.[7] Namely: (1) there was an agreement between the CEMD Defendants and Plaintiff concerning commissions to be earned by/paid to Plaintiff (e.g. "Plaintiff was to earn commission at varying rates between 1% and 8% for selling elevator repairs, maintenance, and modernization contracts for Defendants.") Rowe Declaration, Exhibit F, p. 7, ¶ 52; (2) the CEMD Defendants breached the agreement by failing to pay Plaintiff his earned commissions. *See e.g.* Rowe Declaration, Exhibit F, p. 7-9, ¶¶ 55, 56,

---

[5] As referenced in Plaintiff's Second Amended Complaint, Kone acquired a significant portion of City Elevator's assets in or about September 2016 and relatedly, many of City Elevator's employees, including Plaintiff, began working for Kone around that time. Rowe Declaration, Exhibit A, p. 9, ¶ 75.

[6] The $1,000,000 figure only covers the six-year period prior to the institution of this action in January 2017.

[7] It is axiomatic that the elements of a cause of action for breach of contract are: (1) an agreement; (2) Defendant(s)' breach of that agreement; (3) Plaintiff's performance under the agreement; and (4) damages. *K. Bell & Assoc., Inc. v Lloyd's Underwriters*, 827 F. Supp. 985, 988 (S.D.N.Y. 1993).

4

62, 68; (3) Plaintiff performed pursuant to the agreement by selling elevator repair, maintenance, modernization and new installation contracts. *See e.g.*, Rowe Declaration, Exhibit F, p. 6, 9, 10, 14, ¶¶ 45, 49, 73, 84, 85, 108, 109; and (4) Plaintiff was damaged by the CEMD Defendants' failure to pay Plaintiff his earned commissions. *See e.g.* Rowe Declaration, Exhibit F, p. 7, 9, 10, 11, 14, 15, ¶¶ 55, 56, 68, 79, 85, 88, 111, 117, 122.

On or about July 6, 2017, Plaintiff amended his complaint for the first time to, *inter alia*, add Diemer and Alongis (a current and former owner of City Elevator respectively) as party defendants, to amend the caption to add Diemer and Alongis and to set forth allegations in the amended complaint pertaining to Diemer and Alongis. Rowe Declaration, Exhibit G. Notably, the complaint contained all the above allegations sounding in breach of contract. Rowe Declaration, Exhibit G, p. 9, 10, 11, 12, 13, 17, 18, ¶¶ 75, 79, 82, 85, 86, 92, 98, 103, 109, 114, 115, 118, 138, 139, 141, 147, 152.

On or about July 31, 2017, Plaintiff amended his complaint for the second time to add retaliation claims under the FLSA and NYLL against the CEMD Defendants stemming from, *inter alia*, threats made by Hellman in connection with Plaintiff's instant claims. Rowe Declaration, Exhibit A, p. 19-20, ¶¶ 154-165. As explained in the undersigned firm's July 7, 2017 letter to the Court, Plaintiff had hoped to amend his complaint one time (both to include Diemer and Alongis and to add the retaliation claims) but was unable to do so in light of a pressing deadline to file the First Amended Complaint and the inability to timely obtain consent to amend. Rowe Declaration, Exhibit J, p. 1. As with Plaintiff's First Amended Complaint, his Second Amended Complaint contained all the pertinent allegations from the original complaint which sounded in breach of contract. Rowe Declaration, Exhibit A, p. 9, 10, 11, 12, 13, 14, 17, 18, 19, ¶¶ 75, 79, 82, 85, 86, 92, 98, 103, 109, 114, 115, 118, 138, 139, 141, 147, 152.

6582430.1

On November 17, 2017, counsel for the CEMD Defendants conducted Plaintiff's deposition. Rowe Declaration, Exhibit I. Subsequent to the CEMD Defendants' counsel's marking of the Commission Agreement as Defendants' Exhibit 8, the CEMD Defendants' counsel proceeded to question Plaintiff regarding every aspect of same. Rowe Declaration, Exhibit I. After asking Plaintiff if he recognized the document, the following exchange occurred:

> Q: What do you recognize this to be?
> A: **This is the commission employment agreement that Mitch gave me when I started with him.**
> Q: **Throughout this deposition today we have discussed a commission agreement. Is this the agreement you are referring to?**
> A: **Yes.**

Rowe Declaration, Exhibit I, p. 190,[8] lines 3-10. Emphasis Added.

Thereafter, the CEMD Defendants' counsel questioned Plaintiff about, *inter alia*, whose handwriting the Commission Agreement was in (Hellman's),[9] where the Commission Agreement was written (Plaintiff's house),[10] whether anyone other than Plaintiff and Hellman were present when the Commission Agreement was written,[11] whether the Commission Agreement was dated,[12] the sum and substance of the conversation between Hellman and Plaintiff when the Commission Agreement was created,[13] the meaning of each and every line of the Commission

---

[8] References to page numbers in exhibits which consist of deposition transcript excerpts refer to the page of the deposition transcript.

[9] Rowe Declaration, Exhibit I, p. 190, lines 11-18.

[10] Rowe Declaration, Exhibit I, p. 190, lines 19-22.

[11] Rowe Declaration, Exhibit I, p. 190, lines 23-25.

[12] Rowe Declaration, Exhibit I, p. 191, lines 1-2.

[13] Rowe Declaration, Exhibit I, p. 191, lines 14-24.

6582430.1

Agreement,[14] and whether the Commission Agreement was signed by anyone.[15] In short, the Commission Agreement, its creation and its content were thoroughly questioned by the CEMD Defendants.

On November 21, 2017, Plaintiff's counsel deposed Hellman. Rowe Declaration, Exhibit K. Plaintiff's counsel showed Hellman the Commission Agreement and asked Hellman numerous questions about same concerning, *inter alia*, who wrote the Commission Agreement, where the Commission Agreement was drafted, who chose the numbers that went into the Commission Agreement (Hellman), the fact that the salary set forth in the Commission Agreement was the same salary Plaintiff was paid from at least 2003 to 2006, and the meaning of each and every line of the Commission Agreement. Rowe Declaration, Exhibit K, p. 91 line 7-p. 141 line 10. Again, the Commission Agreement, its creation and its content were thoroughly questioned.

On January 4, 2018, counsel for Plaintiff and Kone deposed Diemer. Rowe Declaration, Exhibit L. Diemer was asked, *inter alia*, whether he recognized the Commission Agreement, and several follow up questions were propounded with respect to Plaintiff's entitlement to commissions. Rowe Declaration, Exhibit L, p. 61 line 6- p. 66 line 2.

On January 5, 2018, counsel for Plaintiff and Kone deposed Alongis. Rowe Declaration, Exhibit M. Alongis was asked, *inter alia*, whether he recognized the Commission Agreement. Rowe Declaration, Exhibit M, p. 31 line 2- p. 32 line 8.

On February 13, 2018, counsel for Plaintiff and the CEMD Defendants deposed Justin Thomasino ("Thomasino"), Vice President of the New York Metropolitan District for Kone.

---

[14] Rowe Declaration, Exhibit I, p. 191, line 25- p. 205 line 13.

[15] Rowe Declaration, Exhibit I, p. 205, lines 23-24.

7

Rowe Declaration, Exhibit N.   Thomasino was shown the Commission Agreement and was asked numerous questions about Plaintiff's commissions including, but not limited to, questions concerning Thomasino's conversations with Hellman regarding Plaintiff's commissions.   Rowe Declaration, Exhibit N, p. 77 line 6- p. 79 line 13.   In sum and substance, Thomasino testified that Plaintiff had an incentive plan, the details of which Thomasino did not know, and that Hellman told Thomasino that the amount of commissions Plaintiff claims he was owed was inaccurate.   Rowe Declaration, Exhibit N, p. 37 line 20- p. 41 line 16, p. 96 line 6- p. 97 line 3. Notably, that is a far cry from the CEMD Defendants' current outlandish position, that Plaintiff was never paid commissions by City Elevator.

On March 9, 2018, counsel for Plaintiff and Kone deposed non-party Anthony Santiago ("Santiago"), a former Chief Financial Officer, for City Elevator.   Rowe Declaration, Exhibit O. Santiago was shown the Commission Agreement and was further asked several questions about Plaintiff's commissions.   Rowe Declaration, Exhibit O, p. 14 line 22- p. 17 line 21.   Santiago testified, *inter alia*, that Plaintiff was paid a weekly salary plus commissions, that Plaintiff received monthly payments in the gross amount of $6,000 representing payments for commissions, that Hellman told him that the $6,000 payments were for commissions owed to Plaintiff, and that Plaintiff was a commission salesperson.   Rowe Declaration, Exhibit O, p. 15 line 3- p. 17 line 12.   Santiago also testified at length about City Elevator's vendor ledger for Plaintiff which Santiago confirmed indicated that commission payments were made to Plaintiff. Rowe Declaration, Exhibit O, p. 21 line 8- p. 25 line 14.

On March 20, 2018, counsel for all parties deposed non-party Andrew Koontz Jr. ("Koontz"), former Executive Vice President for City Elevator.   Rowe Declaration, Exhibit P. Koontz was questioned about, *inter alia*, a commission agreement for Plaintiff, Plaintiff's

8

entitlement to and receipt of commissions, and Hellman's knowledge of the facts that Plaintiff was entitled to commissions and owed money.[16] Rowe Declaration, Exhibit P, p. 32 line 10-12, p. 76 line 23- p. 78 line 11.

In addition to the foregoing, several of the CEMD Defendants' written discovery demands have explicitly inquired into Plaintiff's Commission Agreement. For one, the CEMD Defendants' January 8, 2018, first set of requests for admissions to Plaintiff asked Plaintiff to admit the following: (1) "Admit that Plaintiff did not sign any document that specified terms on which Plaintiff would earn a commission[;]" (2) "Admit that Plaintiff was never provided with a written sales plan at any time during his employment with CEMD[;] and (3) "Admit that neither Mitchell Hellman nor any other CEMD shareholder or principal discussed specific parameters, scope or terms of a sales plan with Plaintiff." Rowe Declaration, Exhibit Q, p. 5-6. The CEMD Defendants requested the admissions concerning sales plans since the words sales plan appear in the Commission Agreement. Rowe Declaration, Exhibit B. For another, the CEMD Defendants' February 20, 2018 second set of interrogatories to Plaintiff asked various questions about sales plan(s). Rowe Declaration, Exhibit R, p. 6-7. Again, the CEMD Defendants interrogatories concerning sales plan(s) were propounded as a result of the words sales plan appearing in the Commission Agreement. Rowe Declaration, Exhibit B. As a third, but not exhaustive example, the CEMD Defendants' February 20, 2018 fourth request for documents requested "[a]ll written

---

[16] On April 10, 2018, a deposition was conducted of Glen Smocovich (a non-party, former commission salesperson for City Elevator). While his deposition transcript is not yet available, he was also questioned about Plaintiff's Commission Agreement as well as Plaintiff's entitlement to and receipt of commissions. Further, Adam Geffner's ("Geffner")(a non-party former controller of City Elevator) deposition is presently scheduled for April 21, 2018. He will likewise be questioned about the Commission Agreement as well as Plaintiff's entitlement to and receipt of commissions.

9

sales plans provided by CEMD, Mitchell Hellman or any of CEMD's principals to the Plaintiff or upon which Plaintiff relies." Rowe Declaration, Exhibit R, p. 5.[17]

The foregoing procedural history bears out that the parties have conducted substantial discovery on the Commission Agreement.

## ARGUMENT

## I.    LEGAL STANDARD

F.R.C.P. 15 (a)(2) entitled "*Other Amendments*" provides "In all other cases [meaning cases where a party is not amending as a matter of course as set forth in F.R.C.P. 15 (a)(1)], a party may amend its pleading only with the opposing party's written consent or the court's leave. *The court should freely give leave when justice so requires.*" Emphasis Added.

Here, Plaintiff attempted to obtain the CEMD Defendants' consent to amend Plaintiff's Second Amended Complaint to formally add a breach of contract cause of action against the CEMD Defendants and to clarify a few previously pled allegations. Indeed, Plaintiff's counsel provided the CEMD Defendants with a redline comparing Plaintiff's Second Amended Complaint and the proposed Third Amended Complaint. Rowe Declaration, Exhibit E.[18] Notwithstanding the fact that the parties have conducted substantial discovery on the CEMD Defendants' breaches of the Commission Agreement as outlined above, and that counsel for the CEMD Defendants had indicated at the deposition of Anthony Santiago that an amendment of the Second Amended Complaint to add a breach of contract claim should not be a problem,[19] the CEMD Defendants have refused to consent to the proposed amendments.

---

[17] Plaintiff has responded to all of the referenced demands.

[18] Exhibit E shows the same substantive proposed changes as the document sent to the CEMD Defendants.

[19] Rowe Declaration, p. 3, ¶ 16.

10

Barring consent, F.R.C.P. 15 (a)(2)[20] provides that the Court should freely give leave to amend when justice so requires. With respect to the foregoing standard, the Supreme Court of the United States has provided

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), 15.08, 15.10. **If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'** Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). Emphasis Added.

The Second Circuit, including the United States District Court for the Southern District of New York, is in lockstep with the foregoing excerpt from *Foman*. *Rachman Bag Co. v Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-235 (2d. Cir. 1995)(citing to *Foman* and upholding District Court's decision to permit a party "to amend its answer more than four years after the complaint was filed" pursuant to F.R.C.P. 15 (a)); *Xerox Corp. v Media Scis. Intern., Inc.*, 511 F. Supp. 2d 372, 379, 390 (S.D.N.Y. 2007)(citing to *Foman* and permitting a third amended complaint pursuant to, *inter alia*, F.R.C.P. 15(a)); and *E\*Trade Fin. Corp. v Deutsche Bank AG*, 420 F.

---

[20] Notably, as the Court has not set a deadline in this action for the parties to amend their pleadings, F.R.C.P. 16 (b) does not govern Plaintiff's motion to amend.

11

Supp. 2d 273, 282 (S.D.N.Y. 2006)(citing to *Foman* for the proposition that the "mandate to give leave freely 'is to be heeded.'").

Here, Plaintiff should be permitted to amend his Second Amended Complaint to formally add a breach of contract cause of action against the CEMD Defendants and to clarify a few of his previously pled allegations. There has been no undue delay, bad faith or dilatory motive on the part of Plaintiff. There have not been repeated failures to cure deficiencies by amendments previously allowed and no undue prejudice will befall the CEMD Defendants by virtue of the proposed amendments. Finally, not only is there an absence of futility with respect to the proposed amendments, but Plaintiff firmly expects to prevail on his claim for breach of contract.

## II.     THERE HAS BEEN NO UNDUE DELAY IN SEEKING TO AMEND

This instant action commenced with the filing of Plaintiff's initial complaint on January 4, 2017. Rowe Declaration, Exhibit F. Plaintiff now, in April 2018, seeks to amend his Second Amended Complaint to formally add a cause of action which, for all intents and purposes, is already in Plaintiff's Second Amended Complaint and which has been thoroughly vetted by both written discovery and depositions. Rowe Declaration, Exhibits A, D, E. Thus, a little more than a year has elapsed between the filing of Plaintiff's initial complaint and Plaintiff's instant motion.[21]

Plainly stated, Courts have routinely permitted amendments to pleadings where the elapsed time was comparable or longer. *Rachman Bag Co. v Liberty Mut. Ins. Co.*, 46 F.3d. 230, 235 (2d. Cir. 1995)(sustaining District Court's decision to permit a party "to amend its answer more than four years after the complaint was filed[.]"); *Termer v Clark Equip. Co.*, 32 Fed R Serv 2d 1323, 1981 WL 380662, *1-2 (W.D.N.Y. 1981)(granting leave to amend answer where

---

[21] Indeed, had Plaintiff's counsel not understood that the CEMD Defendants would have no issue with Plaintiff's proposed amendments, Plaintiff's instant motion would have been made earlier.

party moved to amend one year and eleven months after commencement of the action);

*Catapano v W. Airlines, Inc.*, 105 FRD 621, 623 (E.D.N.Y. 1985)(granting motion to amend

complaint and noting that "[a]lthough plaintiffs moved to amend more than one year after filing

their complaint, this alone does not constitute undue delay."); *Safeco Ins. Co. of Am. v Discover*

*Prop. and Cas. Ins. Co.*, 05 CIV. 8625 (DC), 2008 WL 318314, at \*3-4 (SDNY Feb. 6,

2008)(granting permission to amend pleading where motion seeking leave to do so was filed

more than 15 months after original pleading); *Resorts and Motel Advancement Dev. Agency, Ltd.*

*v Sloan*, 160 F.R.D. 449, 451 (S.D.N.Y. 1995)("Federal courts have excused delays far in excess

of two years.")

   Notably, even if the Court were inclined to find that some delay has occurred, a finding

which Plaintiff would respectfully dispute, delay alone is an insufficient ground for denying

leave to amend. *McCoy v Goldberg*, 845 F. Supp. 155, 158 (S.D.N.Y. 1994). Indeed, delay

must be accompanied by bad faith, prejudice, or futility, none of which are present here. *Id.*

   There has been no undue delay in seeking to amend Plaintiff's operative complaint.

## III. PLAINTIFF'S INSTANT MOTION IS NOT MADE IN BAD FAITH NOR DOES IT STEM FROM A DILATORY MOTIVE

   In brief, Plaintiff's instant motion to amend is not made in bad faith nor does it stem from

a dilatory motive. Indeed, all it seeks to do is formally add a breach of contract cause of action,

which essentially already exists in Plaintiff's Second Amended Complaint, and clarify a few

already existing allegations. Rowe Declaration, Exhibits A, D, E. As proven above, allegations

covering each of the elements of Plaintiff's proposed breach of contract cause of action have

been present in Plaintiff's pleadings since the institution of this action and said proposed cause of

action has been the subject of substantial written discovery and numerous depositions.

6582430.1

At bottom, the CEMD Defendants will not be prejudiced by the proposed amendments.

## VI. <u>PLAINTIFF'S PROPOSED AMENDMENTS ARE NOT FUTILE</u>

In determining whether to grant a motion to amend, Courts will, *inter alia*, determine whether an amendment would be futile. In doing so, a Court will ascertain if the proposed new claim would withstand a motion to dismiss under F.R.C.P. Rule 12(b)(6). *Polanco v NCO Portfolio Mgt., Inc.*, 23 F. Supp. 3d 363, 369 (S.D.N.Y. 2014). Pursuant to F.R.C.P. 12(b)(6), "a complaint is subject to dismissal when it is not legally sufficient to state a claim upon which relief can be granted." *Id.* Further, "[i]n deciding a Rule 12(b)(6) motion, the Court 'accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party.'" *Id.*

"The elements required to state a valid claim for breach of contract are: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and, (4) damages resulting from the breach." *K. Bell & Assoc., Inc. v Lloyd's Underwriters*, 827 F. Supp. 985, 988 (S.D.N.Y. 1993). Here, Plaintiff's chief proposed amendment is a breach of contract cause of action against the CEMD Defendants which alleges the following:[25]

- As set forth above, Plaintiff and City Elevator/its owners entered into an agreement pursuant to which, *inter alia*, Plaintiff was to be paid commissions in connection with his sale of elevator repairs, maintenance, modernization and new installations for Defendants;

- Plaintiff performed under his agreement with the aforesaid Defendants by, *inter alia*, selling millions of dollars' worth of elevator repairs, maintenance, modernization and new installations for Defendants;

---

[25] The impetus for Plaintiff's proposed amendment(s) is that during the course of discovery it became more and more apparent that in addition to Plaintiff's labor law claims, Plaintiff has a substantial breach of contract claim.

6582430.1

Based on the foregoing, it cannot be genuinely argued that Plaintiff has failed to cure deficiencies by amendments previously allowed.

## V. __DEFENDANTS WILL NOT BE PREJUDICED BY PLAINTIFF'S PROPOSED AMENDMENTS__

Of all the factors a Court considers when deciding whether to grant leave to amend a pleading pursuant to F.R.C.P. 15(a), prejudice to the opposing party is considered among the most important. *State Teachers Retirement Bd. v Fluor Corp.*, 654 F.2d. 843, 856 (2d Cir. 1981)("Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.")

In determining whether an opposing party will be unduly prejudiced by proposed amendments, Courts consider, *inter alia*: (1) whether the amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial;" (2) whether the amendment would "significantly delay the resolution of the dispute;" (3) whether the amendment would "prevent the plaintiff from bringing a timely action in another jurisdiction[;]" (4) whether a party had prior notice of a claim; and (5) "whether the new claim arises from the same transaction as the claims in the original pleading[.]" *Urban Box Off. Network, Inc. v Interfase Managers*, L.P., 232 FRD 169, 172 (S.D.N.Y. 2004); *Agerbrink v Model Serv. LLC*, 155 F. Supp. 3d 448, 455 (S.D.N.Y. 2016).

Here, there is no undue prejudice that would result to the CEMD Defendants as a result of Plaintiff's proposed amendments. Initially, the CEMD Defendants would not need to spend additional resources to conduct discovery or prepare for trial. As set forth above, the Commission Agreement that is a subject of Plaintiff's proposed cause of action for breach of

15

contract *has been a topic at seven depositions*[22] *and the subject of several requests for admission, document demands, and interrogatories.* Rowe Declaration Exhibits B, I, K, L, M, N, O, P, Q, R. Any possible discovery that the CEMD Defendants could need with respect to Plaintiff's proposed cause of action for breach of contract has been obtained several times over. As such, the CEMD Defendants will not need to spend any additional resources to conduct discovery or prepare for trial.

Second, Plaintiff's proposed amendments would not significantly delay the resolution of the dispute. Assuming *arguendo* that the Court were to grant Plaintiff's instant motion, Defendants would likely have twenty days to file their answer.[23] Given that no additional discovery is required in connection with Plaintiff's proposed amendments, immediately after Defendants' file their respective answers, all parties could theoretically move for summary judgment and/or a trial date could be set. Notably, as of the filing of this motion, discovery is still ongoing,[24] no motion for summary judgment has been filed, and a trial date has not been set. *State Teachers Retirement Bd. v Fluor Corp.*, 654 F.2d. 843, 856 (2d Cir. 1981)(permitting amendment where no trial date had been set by the Court and no motion for summary judgment had been filed by the Defendants).

Third, Plaintiff's proposed amendments would not prevent the plaintiff from bringing a timely action in another jurisdiction.

---

[22] As mentioned above, the deposition of non-party Geffner is presently scheduled for April 21, 2018 and it can be reasonably anticipated that he will be questioned about the Commission Agreement and Plaintiff's entitlement to and receipt of commissions from the CEMD Defendants.

[23] As discussed *infra*, in granting Plaintiff's motion to amend the Court would, in effect, be making a determination that Plaintiff's proposed amendments are sufficient to withstand an F.R.C.P. 12(b)(6) motion. As such, a motion to dismiss would be illogical.

[24] The current fact discovery deadline is April 30, 2018.

16

Fourth, Defendants have had prior notice of Plaintiff's proposed breach of contract claim. Indeed, aside from the fact that Plaintiff's original complaint and his two amended complaints contain allegations central to a breach of contract claim, on or about March 9, 2018, Plaintiff's counsel advised the CEMD Defendants' counsel that Plaintiff would be seeking to amend his complaint to add a breach of contract claim that tracked Plaintiff's labor law claims. The CEMD Defendants' counsel initially advised that such an amendment should not be a problem before advising on March 29, 2018, that the CEMD Defendants would not consent to Plaintiff's proposed amendment(s). Rowe Declaration, p. 3, ¶ 16. Further, when the parties were before the Court on March 22, 2018 for a pre-motion conference, Plaintiff's counsel advised all counsel and the Court that Plaintiff was seeking to make a motion to amend.

Fifth and finally, Plaintiff's proposed breach of contract cause of action arises from the same transactions as the claims in Plaintiff's original, and for that matter, subsequent pleadings. Putting Plaintiff's overtime claims aside for the moment, the gravamen of Plaintiff's extant complaint is that the CEMD Defendants agreed to pay Plaintiff commissions in connection with his sale of elevator repair, maintenance, modernization and new installation contracts, that Plaintiff sold such contracts, that the CEMD Defendants failed to pay Plaintiff the commissions he has earned and that, as such, Plaintiff was damaged. *See e.g.* Rowe Declaration, Exhibit A, p. 9, 10, 11, 12, 13, 14, 17, 18, 19, ¶¶ 75, 79, 82, 85, 86, 92, 98, 103, 109, 114, 115, 118, 138, 139, 141, 147, 152. While those facts are couched in Plaintiff's extant complaint as, *inter alia*, violations of the FLSA and NYLL, they quite clearly are the essential elements of a breach of contract claim. Rowe Declaration, Exhibit A, p. 12-14, 17-19. In sum, Plaintiff's proposed breach of contract claim arises out of the same transactions as the claims Plaintiff has advanced since the original complaint.

17

At bottom, the CEMD Defendants will not be prejudiced by the proposed amendments.

## VI. <u>PLAINTIFF'S PROPOSED AMENDMENTS ARE NOT BE FUTILE</u>

In determining whether to grant a motion to amend, Courts will, *inter alia*, determine whether an amendment would be futile. In doing so, a Court will ascertain if the proposed new claim would withstand a motion to dismiss under F.R.C.P. Rule 12(b)(6). *Polanco v NCO Portfolio Mgt., Inc.*, 23 F. Supp. 3d 363, 369 (S.D.N.Y. 2014). Pursuant to F.R.C.P. 12(b)(6), "a complaint is subject to dismissal when it is not legally sufficient to state a claim upon which relief can be granted." *Id.* Further, "[i]n deciding a Rule 12(b)(6) motion, the Court 'accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party.'" *Id.*

"The elements required to state a valid claim for breach of contract are: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and, (4) damages resulting from the breach." *K. Bell & Assoc., Inc. v Lloyd's Underwriters*, 827 F. Supp. 985, 988 (S.D.N.Y. 1993). Here, Plaintiff's chief proposed amendment is a breach of contract cause of action against the CEMD Defendants which alleges the following:[25]

- As set forth above, Plaintiff and City Elevator/its owners entered into an agreement pursuant to which, *inter alia*, Plaintiff was to be paid commissions in connection with his sale of elevator repairs, maintenance, modernization and new installations for Defendants;

- Plaintiff performed under his agreement with the aforesaid Defendants by, *inter alia*, selling millions of dollars' worth of elevator repairs, maintenance, modernization and new installations for Defendants;

---

[25] The impetus for Plaintiff's proposed amendment(s) is that during the course of discovery it became more and more apparent that in addition to Plaintiff's labor law claims, Plaintiff has a substantial breach of contract claim.

- Defendants failed to perform in accordance with the agreement by, *inter alia*, failing to pay Plaintiff his earned commissions; and

- Based on the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $1,000,000.

Rowe Declaration, Exhibit D, p. 20-21, ¶¶ 167-170.

The foregoing allegations, to say nothing of the other pertinent allegations in Plaintiff's presently extant complaint which would carry over to the Third Amended Complaint, set forth a breach of contract claim sufficient to survive a motion pursuant to F.R.C.P. 12(b)(6).

In addition to the foregoing, the proposed Third Amended Complaint contains proposed tweaks to a handful of previously existing allegations.  Setting aside technical changes (e.g. changing all instances of "Second Amended Complaint" to "Third Amended Complaint") and grammatical corrections (e.g. adding/removing commas, changing tenses), Plaintiff seeks to add some variation of the phrase "as is required by law" to paragraphs 5, 95, and 96.  Rowe Declaration, Exhibit D, p. 2, 11.  With respect to commission salesmen like Plaintiff, NYLL § 191(c) provides in pertinent part

> The employer shall furnish a commission salesperson, upon written request, a statement of earnings paid or due and unpaid. **The agreed terms of employment shall be reduced to writing, signed by both the employer and the commission salesperson, kept on file by the employer for a period not less than three years and made available to the commissioner upon request. Such writing shall include a description of how wages, salary, drawing account, commissions and all other monies earned and payable shall be calculated.** Where the writing provides for a recoverable draw, the frequency of reconciliation shall be included. **Such writing shall also provide details pertinent to payment of wages, salary, drawing account, commissions and all other monies earned and payable in the case of termination of employment by either party. The failure of an employer to produce such written terms of employment, upon request of the commissioner, shall give rise to a presumption that the**

19

> **terms of employment that the commissioned salesperson has
> presented are the agreed terms of employment.**

Emphasis Added.

The CEMD Defendants have woefully failed to comply with their foregoing obligations under NYLL. Such sentiment is embodied in, *inter alia*, paragraphs 5, 95 and 96 of the Second Amended Complaint. Rowe Declaration, Exhibit A, p. 2, 11. However, upon further review of same, it appears that the allegations could be inadvertently stating that Plaintiff was never provided with a written commission agreement at all, a fact which is flatly incorrect as described above. Adding some variation of the phrase "as required by law" will clarify the paragraphs in question to plead that while Plaintiff did have an enforceable written commission agreement, the CEMD Defendants failed to comply with their legal obligations such as signing the agreement.

Further, Plaintiff seeks to amend paragraph 82 to add the words, "*inter alia*." Rowe Declaration, Exhibit D, p. 9, ¶ 82. While the paragraph as presently alleged sets forth the commission rates that Plaintiff was to earn for the various types of contracts sold, *to wit*, between 1 and 8 percent, it does not reference the additional percentages that Plaintiff would earn on maintenance contracts that were five or more years in duration that are set forth in Plaintiff's Commission Agreement. Rowe Declaration, Exhibit A, p. 9, ¶ 82, Exhibit B. The word, *inter alia*, would be added merely to signal that the Commission Agreement was more comprehensive.

Paragraphs 103, 138, and 150 would add the words "new installation" [referring to a type of contract Plaintiff sold and earned commissions on] to be consistent with paragraph 82 which explicitly lists same. Rowe Declaration, Exhibit A, p. 9, ¶ 82, Exhibit D, p. 9, 12, 17, 18, ¶¶ 82, 103, 138, 150.

20

Paragraphs 118 and 127 would strike the specific references to § 663 (1) of the NYLL to,

*inter alia*, be consistent with Plaintiff's prayer for relief. Rowe Declaration, Exhibit E, p. 14-15,

¶¶ 118, 127. Finally, said prayer for relief would be amended to, *inter alia*, account for

Plaintiff's breach of contract claim. Rowe Declaration, Exhibit E, p. 21-22.

In sum, none of the proposed amendments would be futile.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's instant motion should be granted in its

entirety.

Dated: East Meadow, New York
April 17, 2018

CERTILMAN BALIN ADLER & HYMAN, LLP

By: _____

Douglas E. Rowe, Esq.
Paul A. Pagano, Esq.
*Attorneys for Plaintiff*
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
516-296-7000

21

6582430.1