UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
STEVEN TILCHEN,

                            Plaintiff,

   -against-

CEMD ELEVATOR CORP. d/b/a CITY ELEVATOR,
MITCHELL HELLMAN, STEPHAN DIEMER, CARL
ALONGIS and KONE, INC.,

                           Defendants.
----------------------------------------------------------------X

Case No.: 1:17-CV-00051 (PAC)

**DECLARATION OF STEVEN TILCHEN IN SUPPORT OF MOTION TO AMEND**

STATE OF NEW YORK   )
                                 ) ss.:
COUNTY OF NASSAU   )

      STEVEN TILCHEN, pursuant to 28 U.S.C. § 1746 hereby declares as follows:

      1.     I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration. I am the Plaintiff in this action and the following is based on my personal knowledge.

      2.     This Declaration is submitted in connection with my instant motion pursuant to Federal Rule of Civil Procedure 15 (a)(2) to amend my Second Amended Complaint.

      3.     I have worked in the elevator industry for almost thirty (30) years. For essentially all that time, I, like my father before me, have been a commission salesperson with the primary duty of making sales.

      4.     Indeed, it was my father who taught me to keep logs of my sales.

      5.     Around 2003, I began working for CEMD Elevator Corp. d/b/a City Elevator ("City Elevator"), Mitchell Hellman ("Hellman"), Stephan Diemer ("Diemer"), and Carl Alongis ("Alongis")(collectively "CEMD Defendants").

6.      Prior to working for the CEMD Defendants, I sat down in my house with Hellman, President of City Elevator, and discussed what my compensation would be.

7.      Specially, we discussed, among other things, a salary of $1,350 a week, a car allowance, and a commission structure.

8.      The commission structure we discussed was as follows:

- For the sale of maintenance contracts: (i) I was to earn eight (8) percent of the annual value of the contract for contracts less than 5 years in length; (ii) for contracts that were precisely five years in length, I was to earn ten (10) percent of the annual value of the contract (consisting of the original 8% and an additional 2%); (iii) for contracts that exceeded five years in length, I was to earn an additional one (1) percent of the annual value of the contract per year (e.g. for a 6 year contract I would earn 11 percent of the annual value of the contract in commissions while for a 7 year contract I would earn 12 percent); and (iv) the foregoing figures were to double if I met a sales plan to be provided by the CEMD Defendants;

- For the sale of repair contracts, I would earn three (3) percent of the value of the contract up to the sales plan to be provided by the CEMD Defendants and six (6) percent of the value of the contract once the sales plan was exceeded; and

- For the sale of modernization and new installation contracts, I would earn one (1) percent of the value of the contract up to the sales plan to be provided by the CEMD Defendants and two (2) percent of the value of the contract once the sales plan was exceeded.

9.      While sitting in my house, the foregoing agreed upon terms were memorialized in a document drafted by Hellman ("Commission Agreement"). *See* April 17, 2018 Declaration of Douglas E. Rowe ("Rowe Declaration"), Exhibit B.[1] I thereafter maintained the Commission

---

[1] Notably, the Commission Agreement was made in the regular course of business, it was the regular course of business of City Elevator to create such agreements, the Commission Agreement was made at the time the terms therein were discussed and the Commission Agreement was drafted by someone with knowledge of the terms, namely Hellman.

2

6582350.1

Agreement for my records with the understanding that my compensation would be as set forth in the Commission Agreement.

10.   When I started at City Elevator I was in fact paid $1,350 a week in salary and did receive a car allowance. Unfortunately, while I sold millions of dollars of elevator maintenance, repair, modernization and new installation contracts, as evidenced by the logs[2] I maintained, the CEMD Defendants failed to pay me the commissions I earned and was promised in my Commission Agreement.

11.   Instead of paying me the full commissions I was owed, the CEMD Defendants undertook two steps. First, City Elevator would pay me commissions via one-off checks. Attached as Exhibit H to the Rowe Declaration is a check stub for $10,000 in commissions I received from City Elevator. Rowe Declaration, Exhibit H. Notably, the check in question (along with the corresponding stub) were made in the regular course of business, it was the regular course of business of City Elevator to create such checks, the check was made at or about the time I was paid the $10,000 in commissions, and the check was made by someone with knowledge of the payment. I have maintained the check stub since I was provided with the pertinent check by City Elevator. Second, City Elevator began paying me $6,000 per month towards the commissions I had already earned.

12.   Based on my Commission Agreement, the contracts I sold (as evidenced by, among other things, my sales logs), and the commissions I received from City Elevator, I have

---

[2] For the approximately thirteen (13) years I worked for City Elevator, on a regular basis I would take home the elevator maintenance, repair, modernization and new installation contracts that I sold and enter them into rolling logs that I created and maintained. My logs were made in the regular course of business, it was a regular part of my job to make such logs, the logs were made at or about the time the underlying contracts were entered into or a reasonable time thereafter, and I had knowledge of the information contained in the logs.

3

calculated that the CEMD Defendants owe me in excess of $1,000,000 in commissions for the period of January 4, 2011 to September 1, 2016.

13. I understand from my attorneys that the CEMD Defendants now claim that I was not a commission salesperson and that I was never paid commissions. I am stunned that the CEMD Defendants would take such a position in light of, among other things, the documents produced to date, the non-party declarations obtained to date, and the testimony of literally every person who has been deposed in this matter with the exception of City Elevator's principals, but, suffice it to say, I worked as a commission salesperson for City Elevator and was paid commissions by City Elevator for a period of approximately thirteen (13) years from 2003 until I started working for Kone in September 2016.

14. For the reasons set forth in this Declaration and my accompanying memorandum of law, I ask that my instant motion seeking to amend my Second Amended Complaint be granted in its entirety.

15. I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct pursuant to 28 U.S.C. § 1746. This Declaration was executed on April 17, 2018.

_____
STEVEN TILCHEN

Sworn to this
17th day of April 2018

_____
NOTARY PUBLIC

PHYLLIS SKUDDER
Notary Public, State of New York
No. 01SK4872279
Qualified in Nassau County
Commission Expires Sept. 29, 2018