UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
STEVEN TILCHEN,

                                          Case No.: 1:17-CV-00051 (PAC)

                     Plaintiff,

                                          Hon. Paul A. Crotty

        -against-

CEMD ELEVATOR CORP. d/b/a CITY ELEVATOR,
MITCHELL HELLMAN, STEPHAN DIEMER, CARL
ALONGIS and KONE, INC.,

                     Defendants.
-------------------------------------------------------------------X

### PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO AMEND PLAINTIFF'S SECOND AMENDED COMPLAINT

                                        CERTILMAN BALIN ADLER & HYMAN, LLP
                                        *Attorneys for Plaintiff*
                                        90 Merrick Avenue, 9th Floor
                                        East Meadow, New York 11554
                                        (516) 296-7000

Of Counsel:
        Douglas E. Rowe, Esq.
        Paul A. Pagano, Esq.

6582430.1

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT...................................................................................................................1

I.  DEFENDANTS CONCEDE TWO OF THE RELEVANT FACTORS .........................1

II.  THERE HAS BEEN NO UNDUE DELAY IN SEEKING TO AMEND ...................2

III. DEFENDANTS WILL NOT BE PREJUDICED BY PLAINTIFF'S
     AMENDMENTS ............................................................................................................4

IV. PLAINTIFF'S PROPOSED AMENDMENTS ARE NOT FUTILE ..........................6

CONCLUSION.............................................................................................................10

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Abernathy-Thomas Eng'g Co. v Pall Corp.,*
103 F. Supp. 2d 582 (E.D.N.Y. 2000) .................................................................9

*Agerbrink v. Model Serv. LLC,*
155 F. Supp.3d 448 (S.D.N.Y. 2016).................................................................5

*DeLuca v. Sirius XM Radio, Inc.,*
12 CIV. 8239 TPG, 2014 WL 6838679 (S.D.N.Y. Dec. 4, 2014) .........................4

*Foman v Davis,*
371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).................................................1

*Gemerek v Buffalo Sewer Auth.,*
99-CV-879S, 2008 WL 11363255 (W.D.N.Y. Mar. 31, 2008) ...............................2

*Georgiadis v First Boston Corp.,*
90 CIV. 7672 (PKL), 1993 WL 22122 (S.D.N.Y. Jan. 26, 1993) ...........................8

*Greer v. Mehiel,*
15-CV-6119 (AJN), 2018 WL 1626345 (S.D.N.Y. Mar. 29, 2018) .......................3

*Gutkowski v Steinbrenner,*
680 F. Supp. 2d 602 (S.D.N.Y. 2010)...............................................................8

*I.M. Oberman Assoc., Inc. v Republic Fin. Services, Inc.,*
92 CIV. 1843 (MBM), 1992 WL 370416 (S.D.N.Y. Dec. 7, 1992)......................10

*K. Bell & Assoc., Inc. v Lloyd's Underwriters,*
827 F. Supp. 985 (S.D.N.Y. 1993) .....................................................................7

*Komlossy v Faruqi & Faruqi, LLP,*
15 CIV 9316 (KPF), 2017 WL 722033 (S.D.N.Y. Feb. 23, 2017), affd, 714
Fed Appx 11 (2d Cir 2017) ...............................................................................9

*Kroshnyi v U.S. Pack Courier Services, Inc.,*
771 F.3d 93 (2d Cir. 2014) ...............................................................................9

6582430.1

*Levine v Zadro Products, Inc.,*
    02 CIV.2838 GBD, 2003 WL 21344550 (S.D.N.Y. June 9, 2003)..........................................9

*Lieb v. American Motors Corp.,*
    538 F.Supp. 127 (S.D.N.Y. April 1, 1982)..........................................................................3, 4

*Lyondell-Citgo Refining, LP v. Petroleos De Venezuela S.A.Eyeglasses,*
    02 CIV.0795 CBM AJP, 2004 WL 2650884 (S.D.N.Y. Nov. 22, 2004) ...............................4

*Madison Capital Markets, LLC v Starneth Europe B.V.,*
    15 CIV. 7213, 2016 WL 4484251 (S.D.N.Y. Aug. 23, 2016) ..............................................10

*Marciano v Crowley,*
    08-CV-305-JTC, 2009 WL 3165871 (WDNY Sept. 28, 2009) .............................................9

*McCoy v Goldberg,*
    845 F. Supp. 155 (S.D.N.Y. 1994) .......................................................................................2

*Nasso v Bio Reference Labs., Inc.,*
    892 F. Supp. 2d 439 (E.D.N.Y. 2012) ..................................................................................9

*Seemann v Coastal Envtl. Group, Inc.,*
    219 F. Supp. 3d 362 (E.D.N.Y. 2016) ..................................................................................6

*Seneca Ins. Co., Inc. v. Morelli,*
    No. 95 CIV. 10701 (JSM), 1996 WL 312230 (S.D.N.Y. June 10, 1996)............................10

*Sound Video Unlimited, Inc. v Video Shack Inc.,*
    700 F. Supp. 127 (S.D.N.Y. 1988) .......................................................................................9

*Urban Box Off Network Inc. v. Interfase Managers, L.P.,*
    232 FRD 169 (S.D.N.Y. 2004).............................................................................................5

*Winkler v Friedman,*
    12-CV-3893, 2013 WL 3226763 (E.D.N.Y. June 25, 2013)...............................................10

*Yonofsky v Wernick,*
    362 F. Supp. 1005 (S.D.N.Y. 1973) ...............................................................................9, 10

*Zurich American Ins. Co. v. Lan Cargo S.A.,*
    12 CIV. 9227 CM, 2013 WL 7963678 (S.D.N.Y. Dec. 9, 2013)...........................................2

**State Cases**

*Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.,*
   181 A.D.2d 551 (1st Dep't 1992) ................................................................8

*Joseph Martin, Jr., Delicatessen, Inc. v Schumacher,*
   52 N.Y.2d 105 (1981) ................................................................................8

*Ross v Keene Corp.,*
   52 A.D.2d 581 (2d Dep't 1976) ..................................................................9

*Teutul v Teutul,*
   79 A.D.3d 851 (2d Dep't 2010) ..................................................................8

**State Statutes**

General Obligations Law § 5-701(a)(1) ...........................................................8, 9

General Obligations Law § 5-701(a)(10) ....................................................8, 9, 10

New York Labor Law § 191(c) .......................................................................8

**Rules**

F.R.C.P. 15 (a) ..............................................................................................1

F.R.C.P. 15 (a)(2) ..........................................................................................1

**PRELIMINARY STATEMENT**

Plaintiff Steven Tilchen's ("Plaintiff") moving papers provide that he should be permitted to amend his Second Amended Complaint pursuant to F.R.C.P. 15 (a)(2) to, *inter alia*, include a breach of contract claim as: (1) there has been no undue delay in seeking to amend; (2) his motion is not made in bad faith nor with a dilatory motive; (3) he has not failed to cure deficiencies by prior amendments; (4) Defendants CEMD Elevator Corp. d/b/a City Elevator, Mitchell Hellman, Stephan Diemer and Carl Alongis (collectively "Defendants") will not be prejudiced by his amendments; and (5) his amendments are not futile. Defendants either fail to address the above factors or, alternatively, advance arguments with respect to said factors which are factually and/or legally incorrect. As such, Plaintiff's motion should be granted.

**ARGUMENT**

**I.      DEFENDANTS CONCEDE TWO OF THE RELEVANT FACTORS**

The Supreme Court has provided that factors to be considered in granting a motion to amend pursuant to F.R.C.P. 15 (a) are: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failures to cure deficiencies by previously permitted amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Foman v Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). The Supreme Court also held that in the absence of the foregoing factors, leave to amend should be freely given as the F.R.C.P. requires. *Id.*

Plaintiff's moving papers set forth that his motion to amend is not made in bad faith nor does it stem from a dilatory motive as, *inter alia*, all it seeks to do is formally add a breach of contract claim, which essentially already exists in Plaintiff's Second Amended Complaint, and all prior complaints, and to clarify existing allegations. *See* moving declaration of Douglas

1

Rowe, Esq. ("Rowe Moving Dec."), Exhibits A, D, E. Defendants do not argue that Plaintiff's instant motion is made in bad faith nor that it stems from a dilatory motive.

Plaintiff's moving papers also provide that he has not failed to cure any deficiencies by previously allowed amendments as, *inter alia*, Plaintiff's prior amendments were to add causes of action and defendants rather than to rectify deficiencies. Moreover, Plaintiff cited to *Gemerek v Buffalo Sewer Auth.*, 99-CV-879S, 2008 WL 11363255, *3 (W.D.N.Y. Mar. 31, 2008) for the proposition that failure to cure deficiencies refers to situations where a plaintiff has repeatedly failed to state a claim, not, as here, where prior amendments were to add additional causes of action related to the same facts as the original complaint. Defendants do not argue that Plaintiff failed to cure deficiencies by previous amendments nor do they address *Gemerek*. Defendants' silence on the two foregoing factors requires same to be decided in Plaintiff's favor. *Zurich American Ins. Co. v. Lan Cargo S.A.*, 12 CIV. 9227 CM, 2013 WL 7963678, *3 (S.D.N.Y. Dec. 9, 2013).

## II.      THERE HAS BEEN NO UNDUE DELAY IN SEEKING TO AMEND

A little more than a year has elapsed between the filing of Plaintiff's initial complaint on January 4, 2017 and the filing of Plaintiff's motion. Rowe Moving Dec., Exhibit F. In Plaintiff's moving papers numerous cases were cited which provided that Courts have routinely permitted amendments to pleadings where the elapsed time was similar or longer. Plaintiff's Moving MOL, p. 12-13. Indeed, said cases cited time frames up to approximately four years and noted that federal courts have excused delays well in excess of two years. Plaintiff's Moving MOL, p. 12-13. Plaintiff's moving papers also provided that delay must be accompanied by bad faith, prejudice, or futility, all of which are absent here, to warrant denial of a motion to amend. *McCoy v Goldberg*, 845 F. Supp. 155, 158 (S.D.N.Y. 1994). Plaintiff's Moving MOL, p. 13.

2

It is unclear whether Defendants actually argue that there has been undue delay.  To the extent they do, they argue: (1) Plaintiff waited to the close of discovery to seek leave to file a third amended complaint to assert an "entirely new cause of action[;]" and (2) Courts have denied motions to amend where the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed especially where the movant offers no excuse for the delay.  Defendants' MOL, p. 2-3.  The foregoing arguments are unavailing.[1]

Initially, Plaintiff did not wait until the close of discovery to seek leave to file a third amended complaint.  Plaintiff's motion to amend was filed on April 18, 2018, approximately two weeks prior to the close of discovery.  Further, Plaintiff advised Defendants' counsel that Plaintiff's motion to amend would be forthcoming well in advance of its filing.  Yet still, Plaintiff is not asserting an "entirely new cause of action."  As set forth in painstaking detail in Plaintiff's moving papers, the allegations which underlie Plaintiff's proposed breach of contract claim have existed in all of Plaintiff's complaints.  Plaintiffs' Moving MOL, p. 4-5.

Further, Defendants' argument, in sum and substance, that Plaintiff's motion to amend should be denied because he was aware of the facts set forth in the proposed pleading at the time of the filing of the original pleading and that no excuse has been offered for the delay in moving to amend, is factually incongruent with the instant action and based on an inapposite case.  First, the facts underlying Plaintiff's proposed breach of contract claim *have been in Plaintiff's pleadings from inception*; at this juncture he is merely looking to formally add a breach of contract claim.  *Lieb v. American Motors Corp.*, 538 F.Supp. 127, 131 (S.D.N.Y. April 1, 1982)(amendments permitted where, *inter alia*, the amendments stated the facts supporting the

---

[1] Defendants' citation to *Greer v. Mehiel*, 15-CV-6119 (AJN), 2018 WL 1626345 (S.D.N.Y. Mar. 29, 2018) for, *inter alia*, the proposition that allowing Plaintiff to amend his complaint would unduly delay this litigation is inapposite as, among other things, in *Greer, all parties had already moved for summary judgment. Id.* at *9.

action[2] with greater clarity and the new cause of action arose from the same facts stated in the original complaint).   Second, Plaintiff *has* proffered a reason for any purported delay, namely that "[t]he impetus for Plaintiff's proposed amendment(s) is that during the course of discovery it became more and more apparent that in addition to Plaintiff's labor law claims, Plaintiff has a substantial breach of contract claim."  Plaintiff's Moving MOL, p. 18, fn 25.  Finally, *Lyondell-Citgo Refining, LP v. Petroleos De Venezuela S.A.Eyeglasses*, 02 CIV.0795 CBM AJP, 2004 WL 2650884 (S.D.N.Y. Nov. 22, 2004) on which Defendants rely is inapposite in that, unlike here, in *Lyondell*, the motion to amend was filed *after* the close of discovery and *after* extensive cross-motions for summary judgment had been filed.  *Id*. at *2.  It should also be noted that Courts grant motions to amend where the facts sought to be added were known by a party at the time of the original pleading.  *DeLuca v. Sirius XM Radio, Inc.*, 12 CIV. 8239 TPG, 2014 WL 6838679, *2 (S.D.N.Y. Dec. 4, 2014)(granting motion to amend complaint made approximately 21 months after defendant's answer was filed despite the fact that "facts included in the proposed amendment were known to plaintiff before the filing of the original complaint, and could have been included in the original complaint.")  There has been no undue delay in seeking to amend.

## III. DEFENDANTS WILL NOT BE PREJUDICED BY PLAINTIFF'S AMENDMENTS

Plaintiff's moving papers set forth that Defendants will not be prejudiced by Plaintiff's proposed amendments as, *inter alia:* (1) same would not require Defendants to expend significant additional resources to conduct discovery and prepare for trial as Plaintiff's proposed breach of contract claim has been thoroughly vetted by written discovery demands and numerous depositions; (2) same would not significantly delay the resolution of the dispute as no additional

---

[2] In addition to a proposed breach of contract claim, Plaintiff's proposed amended complaint contains proposed revisions to existing allegations that will provide greater clarity with respect to both Plaintiff's existing causes of action and Plaintiff's proposed cause of action.  Rowe Moving Dec., Exhibit E.

4

discovery is required in connection with Plaintiff's proposed amendments and thus summary judgment motion practice or a trial could commence shortly after a decision on the instant motion; (3) same would not prevent the plaintiff from bringing a timely action in another jurisdiction; (4) Defendants had prior notice of Plaintiff's proposed amendments as, *inter alia*, all of Plaintiff's pleadings contain allegations central to a breach of contract claim, on March 9, 2018, Plaintiff's counsel advised the Defendants' counsel that Plaintiff would be seeking to amend his complaint and on March 22, 2018, during a pre-motion conference, Plaintiff's counsel advised all counsel and the Court that Plaintiff was seeking to make a motion to amend; and (5) Plaintiff's proposed breach of contract claim arises from the same transactions as the claims in all of Plaintiff's pleadings.   In accordance with, *inter alia*, *Urban Box Off Network Inc. v. Interfase Managers, L.P.*, 232 FRD 169, 172 (S.D.N.Y. 2004) and *Agerbrink v. Model Serv. LLC*, 155 F. Supp.3d 448, 455 (S.D.N.Y. 2016), the foregoing are among the factors Courts consider when deciding whether a party will be prejudiced by proposed amendments.

Defendants disingenuously argue that Plaintiff has not set forth the terms of the alleged oral agreement between himself and Defendants, that all of the discovery conducted concerning the Commission Agreement (Rowe Moving Dec., Exhibit B) is irrelevant to Plaintiff's proposed breach of contract claim and that Defendants would be prejudiced if the Court grants Plaintiff's motion to amend as additional discovery would be needed and discovery is closed.   Initially, the proposed amended complaint sets forth the pertinent terms of the agreement between Plaintiff and Defendants; namely that Plaintiff was to be paid commissions at rates between one (1) and eight (8) percent based on, *inter alia*, the type of contract sold, *to wit*, maintenance, repair, and/or modernization/new installation.   Rowe Moving Dec., Exhibit D, p. 9-10, ¶ 82.   Further, Plaintiff has pled, and indeed as part of his instant motion seeks to clarify certain already existing

allegations, to provide that the Commission Agreement is a *written* and enforceable agreement between Plaintiff and the Defendants for the payment of commission.  Yet still, there is no legitimate question that the terms set forth in the proposed amended complaint, and the Commission Agreement, are the terms of the agreement between Plaintiff and Defendants.[3]  Said terms have been the subject of substantial written discovery and numerous depositions.  For Defendants to assert that the terms of the pertinent agreement are unknown is absurd.  Relatedly, Defendants' claim that they need additional discovery in connection with Plaintiff's proposed amendment(s) and that they cannot obtain same since discovery is now closed is entirely without merit.  If Defendants did in fact need additional discovery they could have moved to extend the discovery deadline at any point.  Defendants will not be prejudiced by the proposed amendments.

## IV. <u>PLAINTIFF'S PROPOSED AMENDMENTS ARE NOT FUTILE</u>

Defendants incorrectly argue that Plaintiff's proposed breach of contract claim is futile as it is purportedly not sufficiently pled and, even if it were, it is futile as a matter of law.  Initially, Defendants argue that the proposed amended pleading does not "allege that the parties ever agreed to a precise commission percentage that would be applicable" to Plaintiff's sales. Defendants' MOL, p. 4.  To the contrary, the proposed amended pleading sets forth all of the

---

[3] Defendants argue that the Commission Agreement should not be considered in connection with Plaintiff's motion as the proposed pleading does not attach the Commission Agreement as an exhibit or incorporate it by reference. Notably, *Seemann v Coastal Envtl. Group, Inc.*, 219 F. Supp. 3d 362, 370 (E.D.N.Y. 2016), cited by Defendants in support of their argument, provides "neither the Plaintiff's initial complaint nor his [proposed amended complaint] *refer to* the charter agreement or incorporate it by reference[.]"  Emphasis Added.  Here, to the extent that the Commission Agreement is not incorporated by reference, at worst, the proposed pleading *refers* to it.  Rowe Moving Dec., Exhibit D, p. 9-10, 20-21, ¶¶ 82, 166-170.  The rest of the documents Plaintiff submits show, *inter alia*, a lack of prejudice to Defendants given that the proposed amendments have been the subject of substantial discovery and that there has been performance under the Commission Agreement, *to wit*, Plaintiff has sold contracts and Defendants have paid Plaintiff commissions; albeit insufficient commissions.  Defendants' argument that partial performance cannot take an agreement outside the statute of frauds where there is no specific prayer for equitable relief is off-base.  First, the proposed pleading contains a prayer for equitable relief.  Rowe Moving Dec., Exhibit D, p. 22.  Second, Plaintiff has fully performed his obligations under the Commission Agreement by selling contracts. Third, the submitted documentation, bearing out commission payments to Plaintiff, is indicia of the *written* Commission Agreement's validity.

6582430.1

required elements of a breach of contract claim: (1) the existence of an agreement to pay Plaintiff commissions in connection with his sale of elevator, repair, maintenance and new installation contracts at varying rates between 1% and 8% depending upon the type of contract sold; (2) Plaintiff's performance under the agreement via the sale of such contracts: (3) Defendants' breach of the agreement in failing to pay Plaintiff his earned commissions; and (4) resulting damages. Rowe Moving Dec., Exhibit D, p. 9-10, 20-21, ¶¶ 82, 166-170. *K. Bell & Assoc., Inc. v Lloyd's Underwriters*, 827 F. Supp. 985, 988 (S.D.N.Y. 1993). The foregoing sufficiently states a breach of contract claim. If for some reason the Court disagrees, it is well within the Court's authority to permit Plaintiff to rectify any theoretical pleading deficiencies.

Defendants also incorrectly argue that the proposed breach of contract claim is futile as the agreement suffers from a lack of definiteness and is barred by the statute of frauds. Defendants argue that the parties never agreed to a precise commission rate applicable for each specific type of contract sold and thus it is impossible to objectively fix the amount that could be due to Plaintiff while citing to several inapposite cases.[4] In addition to the fact that the pertinent commission percentages are set forth in the proposed pleading, the Commission Agreement sets forth precisely the commissions to be earned for each type of contract. For maintenance contracts, Plaintiff was to be paid 8% of the annual value of the contract if said contract was for a term of less than five years, 10% for a five-year contract, and 1% for every additional year. Rowe Moving Dec., Exhibit B. Notably, the length of a contract is determined at or before the time the contract is closed and thus commissions were not contingent upon a customer's future decisions/actions. Rowe Moving Dec., Exhibit B. For repair contracts Plaintiff was to earn 3% of the value of the contract. Rowe Moving Dec., Exhibit B. For modernization and new

---

[4] Defendants repeated references to a profit sharing plan are a red herring as, *inter alia*, Plaintiff has never asserted a claim in connection with a profit sharing plan.

installation contracts Plaintiff was to earn 1% of the value of the contract.  Rowe Moving Dec., Exhibit B.   That the foregoing agreed upon commission percentages were to double in connection with a sales plan to be provided by Defendants does not, as Defendants suggest, affect the definiteness of said percentages.  The cases Defendants cite to support their position are inapposite in that, in each case, there was no criteria to determine the sums sought and in every case except *Gutkowski*, the provision in question explicitly referenced additional negotiations/discussions.[5]  Here, each type of contract has a precise commission percentage and there is no reference to future negotiations.

Defendants also argue that the Commission Agreement is barred by General Obligations Law ("G.O.L.")  §§ 5-701(a)(1) and (a)(10).   Initially, Defendants' insistence that the Commission Agreement is an oral agreement and that Plaintiff has admitted that there is no written agreement is betrayed by, *inter alia*, the proposed pleading and Plaintiff's Moving MOL wherein it is explicitly stated that several of the proposed amendments to the Second Amended Complaint are to clarify that while Plaintiff was provided with a written and enforceable commission agreement, Defendants failed to comply with their obligations under, *inter alia*, New York Labor Law § 191(c) such as signing the agreement.  Plaintiff's Moving MOL, p. 19-20.   Assuming *arguendo* that the Commission Agreement is not an enforceable written

---

[5] In *Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.*, 181 A.D.2d 551, 551 (1st Dep't 1992), the Court upheld a motion to dismiss where "[t]he agreement further provided that defendants would pay plaintiff 'on any commercial lease or on a sale, a commission to be separately determined.'"  In *Joseph Martin, Jr., Delicatessen, Inc. v Schumacher*, 52 N.Y.2d 105, 110–11 (1981), Plaintiff attempted to enforce a renewal clause which provided "annual rentals to be agreed upon."  In *Gutkowski v Steinbrenner*, 680 F. Supp. 2d 602, 610 (S.D.N.Y. 2010), Plaintiff sought to enforce an oral agreement whereby "Defendant 'told Plaintiff that he would be compensated fairly for his efforts,' and, similarly, that Plaintiff would 'be fairly compensated for his idea and efforts.'"  In *Teutul v Teutul*, 79 A.D.3d 851, 852 (2d Dep't 2010), plaintiff sought to enforce a provision to purchase shares in defendant, a closely held corporation, where such provision provided that the shares would be bought "for fair market value, as determined by a procedure to be agreed to by the parties as soon as practicable."  In *Georgiadis v First Boston Corp.*, 90 CIV. 7672 (PKL), 1993 WL 22122, at *7 (S.D.N.Y. Jan. 26, 1993), plaintiff sought to enforce a provision that provided "we would envisage that you receive either a flat 'finder fee' or a percentage of our success fee.... Such agreement could be confirmed for each case in a separate letter to you."

agreement, but rather a memorialization of an oral agreement, Defendants are precluded from raising a statute of frauds defense as same has been waived as the statute of frauds has not been pled as an affirmative defense in any of Defendants' answers to date. *Sound Video Unlimited, Inc. v Video Shack Inc.*, 700 F. Supp. 127, 150 (S.D.N.Y. 1988)("The statute of frauds is an affirmative defense that must be raised in the answer or is waived.")

As to G.O.L. § 5-701(a)(1), the Commission Agreement, which was entered into in connection with Plaintiff's employment at-will with Defendants and which only requires commissions in connection with given completed sales, rather than on an ongoing basis, can be performed within a year and thus is not subject to the statute of frauds. *Ross v Keene Corp.*, 52 A.D.2d 581 (2d Dep't 1976)(alleged oral commission agreement not within statute of frauds as, *inter alia*, it was terminable at will by either party); *Kroshnyi v U.S. Pack Courier Services, Inc.*, 771 F.3d 93, 110–11 (2d Cir. 2014)(noting that "oral employment agreements lacking a fixed duration are not covered by the statute of frauds, because they could theoretically be terminated by either party within one year of their making" and that an express termination provision is not required to remove an oral agreement from the statute of frauds).[6]

Defendants' argument sounding in G.O.L. § 5-701(a)(10) is incorrect as same is inapplicable to employees acting in the scope of their job. *Yonofsky v Wernick*, 362 F. Supp.

---

[6] The cases Defendants cite for the proposition that the Commission Agreement is barred by G.O.L. § 5-701(a)(1) are inapposite. In *Nasso v Bio Reference Labs., Inc.*, 892 F. Supp. 2d 439, 447 (E.D.N.Y. 2012), unlike here where Plaintiff was paid commissions in connection with specific given completed sales, the oral agreement was for an infinite duration in that plaintiff would "*receive '10% of all monies defendant earned from accounts [p]laintiff referred to defendant as well as from accounts generated or referred to defendant from accounts originally referred to defendant by plaintiff.*'" Emphasis Added. Likewise, in *Komlossy v Faruqi & Faruqi, LLP*, 15 CIV. 9316 (KPF), 2017 WL 722033, at *7 (S.D.N.Y. Feb. 23, 2017), affd, 714 Fed Appx 11 (2d Cir 2017) the firm's commission liability continued indefinitely as long as the firm earned fees from a client that plaintiff first generated. Similarly, *Marciano v Crowley*, 08-CV-305-JTC, 2009 WL 3165871, at *7 (WDNY Sept. 28, 2009), concerned a commission agreement that contemplated on going obligations, as opposed to commissions on certain specific sales as here. In *Levine v Zadro Products, Inc.*, 02 CIV.2838 GBD, 2003 WL 21344550, at *5 (S.D.N.Y. June 9, 2003), commissions were allegedly to be paid "*so long as orders placed by certain customers [were] accepted.*" Emphasis Added. Finally, in *Abernathy-Thomas Eng'g Co. v Pall Corp.*, 103 F. Supp. 2d 582, 611 (E.D.N.Y. 2000), unlike here, commissions were contingent on the actions of a third-party.

1005, 1029 (S.D.N.Y. 1973)(G.O.L. § 5-701(a)(10) is "aimed at a middleman-broker or finder-who arranges a transaction between two outsiders."); *Seneca Ins. Co., Inc. v. Morelli*, No. 95 CIV. 10701 (JSM), 1996 WL 312230, at *2 (S.D.N.Y. June 10, 1996) ("breach of contract claims by one rendering services as an employee and not merely acting as a finder or negotiator fall outside of New York's Statute of Frauds"). Each of the cases Defendants cite in support of their argument are inapposite.[7]    None of same concern a breach of contract claim by one rendering services as an employee.

    In closing on the issue of futility, it should be noted that Defendants did not argue that any of the proposed amendments Plaintiff addresses on pages 19-21 of Plaintiff's Moving MOL would be futile.  As such, it should be conceded that such changes would not be futile.  In sum, none of the proposed amendments would be futile.

## CONCLUSION

    Plaintiff's instant motion should be granted in its entirety.

Dated: East Meadow, New York        CERTILMAN BALIN ADLER & HYMAN, LLP
       June 1, 2018

                                     By: _____
                                         Douglas E. Rowe, Esq.
                                         *Attorneys for Plaintiff*
                                         90 Merrick Avenue, 9th Floor
                                         East Meadow, New York 11554
                                         516-296-7000

---

[7] In *Madison Capital Markets, LLC v Starneth Europe B.V.*, 15 CIV. 7213, 2016 WL 4484251, at *13 (S.D.N.Y. Aug. 23, 2016), plaintiff, a middleman broker-dealer, sought compensation with respect to services it rendered in connection with an acquisition.  In *Winkler v Friedman*, 12-CV-3893, 2013 WL 3226763, at *1 (E.D.N.Y. June 25, 2013), plaintiff was retained as a consultant to, *inter alia*, acquire new customers.  In *I.M. Oberman Assoc., Inc. v Republic Fin. Services, Inc.*, 92 CIV. 1843 (MBM), 1992 WL 370416, at *1-3 (S.D.N.Y. Dec. 7, 1992), plaintiff was an agent of an insurance company tasked with selling insurance policies pursuant to, *inter alia*, an alleged agency contract and agency relationship.