UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEVEN TILCHEN

                               Plaintiff,

     v.

CEMD ELEVATOR CORP. d/b/a CITY ELEVATOR, MITCHELL HELLMAN, STEPHA DIEMER, CARL ALONGIS and KONE, INC.,

                               Defendants

Case No. 17-CV-00051 (PAC)

---

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT TO DISMISS THE TORTIOUS <u>INTERFERENCE COUNTERCLAIM</u>**

 

Law Office of Ethan A. Brecher, LLC
600 Third Avenue, 2nd Floor
New York, NY 10016
Phone: (646) 571-2440
Fax: (888) 821-0246

*Attorney for Plaintiff*

# PRELIMINARY STATEMENT

Plaintiff Steven Tilchen ("Plaintiff" or "Tilchen") pursuant to Rule 56.1 of the Local Rules of the Southern and Eastern Districts of New York, respectfully submits this statement of material facts for which there is no genuine issue to be tried in support of his motion for summary judgment on the counterclaim for tortious interference with contract brought by Defendants CEMD Elevator Corp. d/b/a City Elevator ("CEMD"), Mitchell Hellman ("Hellman"), Stephan Diemer ("Diemer") and Carl Alongis ("Alongis")(collectively the "Defendants").

1. Starting in 2003 Tilchen began working for CEMD as a salesman selling elevator maintenance, repair, and modernization services.

> Citation to Evidence: Declaration of Steven Tilchen ("Tilchen Decl.") at ¶ 1.

2. CEMD entered into an Asset Purchase Agreement (the "APA") with KONE Inc. ("KONE") on July 28, 2016.

> Citation to Evidence: Declaration of Ethan A. Brecher ("Brecher Decl.") at ¶ 6; Brecher Decl. Ex. 1.

3. Hellman and Diemer executed the APA on behalf of CEMD and John R. Lynly executed the APA on behalf of KONE.

> Citation to Evidence: Brecher Decl. Ex. 1.

4. KONE purchased CEMD's Assumed Maintenance Contracts, which as per Revised Schedule 1.01(a) and 1.01(b) of the APA, amounted to 276 contracts between CEMD and its consumers.

> Citation to Evidence: Brecher Decl. at ¶ 7; Brecher Decl. Ex. 2.

5. KONE also purchased CEMD's WIP Contracts, which as per Revised Schedule 1.01(f) of the APA, amounted to 8 contracts between CEMD and its consumers.

      Citation to Evidence:  Brecher Decl. at ¶ 8; Brecher Decl. Ex. 3

6. Pursuant to the Assignment and Assumption Agreement executed on August 31, 2016 between CEMD and KONE, CEMD conveyed, transferred, and assigned to KONE all of CEMD's "rights and interests to the Assumed Maintenance Contracts and WIP Contracts."

      Citation to Evidence:  Brecher Decl. at ¶ 9; Brecher Decl. Ex. 4.

7. The APA contains a provision regarding a reduction in the purchase price for KONE's purchase of CEMD's assets. The parties agreed that the purchase price was subject to reduction for "lost revenue as a result of the termination of the Assumed Maintenance Contracts, provided that the termination of the Assumed Maintenance Contracts or lost revenue is not the result of any act or omission or [SIC] the Buyer [KONE]." This purchase price reduction provision applied to contracts terminated in "the first year following the closing date."

      Citation to Evidence: Brecher Decl. Ex. 1.

8. The closing date of the APA was September 1, 2016.

      Citation to Evidence: Brecher Decl. Ex. 1.

9. Tilchen became a KONE employee as of September 1, 2016.

      Citation to Evidence: Tilchen Decl. at ¶ 3.

10. Tilchen submitted a resignation letter to KONE on January 9, 2017.

      Citation to Evidence: Tilchen Decl. at ¶ 4; Tilchen Decl. Ex. 1.

11. Tilchen became an employee of Keystone Iron & Wire Works, Inc.("Keystone") in late

January of 2017.

Citation to Evidence: Tilchen Decl. at ¶ 8.

12. Keystone drafted maintenance contracts with sixteen former KONE consumers.

Citation to Evidence: Brecher Decl. Exs. 5-20.

13. Contracts with fifteen of the sixteen former KONE consumers were fully executed between Keystone and each said customer.

Citation to Evidence: Brecher Decl. Exs. 5-20.

14. Three maintenance contracts with "Owner/AgentVarick Realty" were not executed between Keystone or the customer.

Citation to Evidence: Brecher Decl. Ex. 20.

15. All sixteen of the addresses in the Keystone maintenance contracts were also listed in the APA's Revised Schedules 1.01(a) or 1.01(b) of Assumed Maintenance Contracts.

Citation to Evidence: Brecher Decl. Exs 5-20; Brecher Decl. Ex. 2.

16. CEMD produced thirteen contracts with the consumers who subsequently negotiated agreements with Keystone.

Citation to Evidence: Brecher Decl. Exs. 21 -33.

17. Upon information and belief, CEMD did not produce CEMD contracts with the following consumers identified in the Keystone agreements as owner/agent: Jordan Cooper Real Estate, Project Renewal, or Brookefield Condominiums.

Citation to Evidence: Brecher Decl at ¶ 42.

18. Three of the CEMD contracts produced were not executed by the consumer.

Citation to Evidence: Brecher Decl. Exs.21-23.

19. Four CEMD contracts contained a five-year term which expired after the dates of the

contracts the consumers entered into with Keystone. After the expiration of the five-year term, the agreement between the parties could continue from "year to year thereafter unless terminated in writing by either party thirty (30) days prior to the end of any contract term."

<u>Citation to Evidence</u>: Brecher Decl. Exs. 24-27.

20. The CEMD contract for equipment located at 185 Varick Street, NY, NY contained a five-year term which was effective after a 12-month warranty maintenance and was dated June 1, 2007.

<u>Citation to Evidence</u>: Brecher Decl. Ex. 23.

21. The CEMD contract for equipment located at 620 Central Ave., Cedarhurst, NY 11516 contained a five-year term which expired on October 16, 2015, after which the agreement could continue "year to year thereafter unless terminated in writing by either party thirty (30) days prior to the end of any contract term."

<u>Citation to Evidence</u>: Brecher Decl. Ex. 28.

22. The CEMD contract for equipment located at 165 North Village Ave., 30 Hempstead Ave., RVC, NY 11570 contained a five-year term which expired on September 1, 2008, after which the agreement could continue "year to year thereafter unless terminated in writing by either party thirty (30) days prior to the end of any contract term."

<u>Citation to Evidence</u>: Brecher Decl. Ex. 29.

23. The CEMD contract for equipment located at 635 Central Ave. Cedarhurst, NY 11516 contained a five-year term which expired on May 1, 2012, after which the agreement could continue "year to year thereafter unless terminated in writing by either party thirty (30) days prior to the end of any contract term."

<u>Citation to Evidence</u>: Brecher Decl. Ex. 30.

24. The CEMD contract for equipment located at 53 East 80th Street, NY, NY 10075 contained a five-year term which expired on September 1, 2015, after which the agreement could continue "year to year thereafter unless terminated in writing by either party thirty (30) days prior to the end of any contract term."

Citation to Evidence: Brecher Decl. Ex. 21.

25. The CEMD contract for equipment located at 801 Amsterdam Ave., NY, NY contained a five-year term which expired on December 1, 2015, after which the agreement could continue "year to year thereafter unless terminated in writing by either party thirty (30) days prior to the end of any contract term."

Citation to Evidence: Brecher Decl. Ex. 22.

26. The CEMD contract with Seawane Country Club contained a five-year term which expired on March 1, 2008, after which the agreement could continue "year to year thereafter unless terminated in writing by either party thirty (30) days prior to the end of any contract term."

Citation to Evidence: Brecher Decl. Ex. 31.

27. The CEMD contract with Neighborhood Playhouse became effective on July 15, 2012 and continued "month to month thereafter unless terminated in writing by either party thirty (30) days prior to the end of any contract term."

Citation to Evidence: Brecher Decl. Ex. 32.

28. A CEMD contract for equipment located at 20 Greene Street, NY, NY 10013 date April 16, 2012 contained a five-year term which expired on June 1, 2017, after which the agreement could continue "year to year thereafter unless terminated in writing by either party thirty (30) days prior to the end of any contract term." CEMD subsequently entered into a contract for

equipment located at 20 Greene Street, NY, NY 10013 dated August 3, 2015 which did not contain a term of service.

> Citation to Evidence: Brecher Decl. Ex. 33.

29. On February 12, 2018, CEMD and KONE executed Amendment No. 1 to the Asset Purchase Agreement (the "Amendment").

> Citation to Evidence: Brecher Decl. at ¶ 43; Brecher Decl. Ex. 34.

30. Exhibit 5 to the Amendment is a list of former CEMD contracts contained on Revised Schedule 1.01(a) which were cancelled. A total of 150 contracts were cancelled.

> Citation to Evidence: Brecher Decl. Ex. 34.

31. Exhibit 6 to the Amendment is a list of former CEMD contracts contained on Revised Schedule 1.01(b) which were cancelled. A total of 12 contracts were cancelled.

> Citation to Evidence: Brecher Decl. Ex. 34.

32. Project Renewal, one of the owners of a maintenance contract entered into by Keystone and a former KONE customer, was not listed either cancellation list by the known location of the equipment 215-225 East 45th Street, NY, NY.

> Citation to Evidence: Brecher Decl. Ex. 34.

33. Hellman prepared a list of consumers who had a contract with CEMD, which according to Hellman were all subsequently assigned to KONE (the "Hellman List"). CEMD produced the Hellman List.

> Citation to Evidence: Brecher Decl. Ex. 35 at 283:10- 284:7; 285:13-21; Brecher Decl. Ex. 36.

34. One of the contracts on the Hellman List, identified as 119 Chambers Street, was not listed on either Revised Schedule 1.01(a) or Revised Schedule 1.01(b) of the APA nor either of the cancellation lists. In KONE's Answers to Plaintiff's Second Set of Interrogatories, KONE

admitted that all of the contracts identified on the Hellman List were cancelled "with the exception of the contract for 119 Chambers Street, which address KONE was not able to find any record of a contract or cancellation."

>Citation to Evidence: Brecher Decl. Ex. 37.

35. The remaining contracts on the Hellman List appear in Revised Schedule 1.01(a) and Revised Schedule 1.01(b).

>Citation to Evidence: Tilchen Decl. at ¶ 7; Brecher Decl. Ex. 36; Brecher Decl. Ex. 2.

36. The Hellman List contains consumers whose contracts were formerly with CEMD that Hellman alleged were tortiously interfered with by Tilchen.

>Citation to Evidence: Brecher Decl. Ex. 35 at 283:24- 284:5; 291:14 – 292:20.

37. The remaining contracts on the Hellman List appear in the cancellation lists attached to the Amendment with the exception of 119 Chambers Street and the following equipment location addresses associated with the Miller & Miller Account: 38-18 33rd Street, 425 West 57th Street, and 45 Park Terrace West (AKA: 550 W 215th Street).

>Citation to Evidence: Tilchen Decl. at ¶ 7; Brecher Decl. Ex. 36; Brecher Decl. Ex. 34.

38. Hellman does not have any firsthand knowledge of Tilchen speaking to any customer identified on the Hellman List.

>Citation to Evidence: Brecher Decl. Ex. 35 at 295:21-296:17; 304:12-306:6.

39. Hellman did not recall any specific comments Tilchen made to any of the customers identified on the Hellman List.

>Citation to Evidence: Brecher Decl. Ex. 35 at 296:4-16.

40. Diemer does not have any firsthand knowledge of Tilchen speaking to any customer

identified on the Hellman List.

>Citation to Evidence: Brecher Decl. Ex. 38 at 118:20-130:5.

41. Diemer spoke with representatives from Miller & Miller Account, a company identified on the Hellman List.

>Citation to Evidence: Brecher Decl. Ex. 38 at 123:7-127:7.

42. The representatives from Miller & Miller Account told Diemer that Tilchen met with them in order to "get the contract." The representatives from Miller & Miller told Diemer that Tilchen "submitted some sort of contracts" for the Miller & Miller buildings.

>Citation to Evidence: Brecher Decl. Ex. 38 at 125:13-19; 127:3-7.

43. Diemer did not recall speaking without anyone else on the Hellman List who mentioned Tilchen.

>Citation to Evidence: Brecher Decl. Ex. 38 at 127:8 – 128:25.

44. Diemer did speak with a customer regarding Tilchen who was not identified on the Hellman List who told Diemer that they spoke with Tilchen and the sum and substance of their conversation was the "same concept" at the conversation with the Miller & Miller representative: "to try and get the job."

<u>Citation to Evidence</u>: Brecher Decl. Ex. 39 at 129:1-14.

Dated New York, New York
February 5, 2019

Respectfully submitted,

/s/ Ethan A. Brecher
**ETHAN A. BRECHER (EB 3425)**
Law Office of Ethan A. Brecher, LLC
600 Third Avenue, 2nd Floor
New York, NY 10016
Phone: (646) 571-2440
Fax: (888) 821-0246
Email: ethan@ethanbrecherlaw.com

*Attorney for Plaintiff*

9