UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
STEVEN TILCHEN,                                              Index No.  1:17-cv-00051

                                        Plaintiff,

                    -against-

CEMD ELEVATOR CORP. d/b/a CITY ELEVATOR,
MITCHELL HELLMAN, STEPHAN DIEMER, CARL
ALONGIS, and KONE, INC.,

                                        Defendants/Counterclaimants.
--------------------------------------------------------------------------------X

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS/COUNTERCLAIMANTS'
MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

---

On the memo:
              Elbert F. Nasis, Esq.
              Gregory S. Lisi, Esq.
              Lisa M. Casa, Esq.

FORCHELLI DEEGAN TERRANA LLP
*Attorneys for Defendants/Counterclaimants
CEMD Elevator Corp. d/b/a City Elevator, Mitchell
Hellman, Stephan Diemer, and Carl Alongis*
333 Earle Ovington Blvd., Suite 1010
Uniondale, New York 11553

## **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………………….i

TABLE OF AUTHORITIES…………………………………………………………………ii

PRELIMINARY STATEMENT………………………………………………………………..1

STATEMENT OF THE FACTS………………………………………………......................2

LEGAL ANALYSIS………………………………………………………………................2

    I.      STANDARD OF REVIEW…………………………………………………..2

    II.     PLAINTIFF'S CLAIM FOR UNPAID COMMISSIONS UNDER THE NEW YORK LABOR LAW FAIL AS A MATTER OF LAW BECAUSE THERE IS NO CONTRACT FOR COMMISSIONS…………….3

          A.  Plaintiff Does Not Have an Enforceable Contractual Right to Commissions…………………………………………………………....4

          B.  A Written Agreement Does Not Exist to Satisfy the Statute of Frauds…….7

    III.    PLAINTIFF'S CLAIM FOR "UNLAWFUL DEDUCTIONS" UNDER THE FLSA FAILS AS A MATTER OF LAW AS WELL…………………………..8

    IV.    PLAINTIFF IS EXEMPT FROM OVERTIME REQUIREMENTS MANDATED BY THE FLSA AND NYLL AS A HIGHLY COMPENSATED AND ADMINISTRATIVELY EXEMPT EMPLOYEE………………………………………………………………10

          A.  Plaintiff Earned Enough Money to Satisfy the Salary Requirements of the Highly Compensated and Administrative Employee Exemptions…………………………………………………………12

              1.  Plaintiff Earned in Excess of $100,000 Annually………………………12

              2.  Plaintiff Satisfies the Salary Requirements of the Administrative Exemption…………………………………………………....13

          B.  Plaintiff Meets the Duty Requirements to Satisfy the Highly Compensated Employee and Administrative Exemption…………………………………14

1.   Plaintiff Conducted Office or Non-Manual Work Directly Related to Management or General Business Operations……………………………14

2.   Plaintiff Exercised Discretion and Independent Judgment as Director and Vice President of Sales………………………………………………..17

V.    PLAINTIFF'S CLAIM FOR RECORD KEEPING VIOLATIONS UNDER THE NYLL FAILS AS A MATTER OF LAW…………………...18

VI.   PLAINTIFF'S CONVERSION CLAIM FAILS AS A MATTER OF LAW....19

VII.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS DUPLICATIVE OF HIS NYLL CLAIM AND, THEREFORE, FAILS AS A MATTER OF LAW…………………………………………………………….20

VIII. PLAINTIFF'S EIGHTH AND NINTH CAUSES OF ACTION ALLEGING RETALIATION UNDER THE FLSA AND NYLL HAVE NO BASIS IN LAW OR FACT AND SHOULD BE DISMISSED………………………………………………………………...22

IX.   PLAINTIFF'S CLAIMS AGAINST ALONGIS ARE UNTIMELY………….23

X.    PLAINTIFF TORTIOUSLY INTERFERED WITH DEFENDANTS' CONTRACTS WITH EXISTING CUSTOMERS………….24

CONCLUSION…………………………………………………………………….......25

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby*, Inc.,
  477 U.S. 242 (1986) ........................................................................................... 2

*Apostolos v. R.D.T. Brokerage Corp.*,
  159 A.D.2d 62, 559 N.Y.S.2d 295 (1st Dept. 1990) .................................. 8

*Bellone v. Kraft Power Corp.*,
  2016 WL 2992126 (E.D.N.Y. May 23, 2016) ....................................... 11

*Caci v. Wiz of Lake Grove, Inc.*,
  267 F. Supp. 2d 297 (E.D.N.Y. 2003) .................................................... 9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................... 2

*Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.*,

  181 A.D.2d 551 (1st Dep't 1992) ............................................................ 5

*Darveau v. Detecon, Inc.*,
  515 F.3d 334 (4th Cir. 2008) .................................................................... 15

*De Beerski v. Paige*,
  36 N.Y. 537 (1867) .................................................................................... 8

*Debary v. Harrah's Operating Co.*,
  465 F. Supp. 2d 250 (S.D.N.Y. 2006), *aff'd sub nom. Catskill Dev., L.L.C. v. Park Place
  Entm't Corp.*, 547 F.3d 115 (2d Cir. 2008) ........................................... 24

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
  770 F. Supp. 2d 497 (E.D.N.Y. 2011) ................................................... 9

*Digizip.com, Inc. v. Verizon Servs. Corp.*,
  139 F. Supp. 3d 670 (S.D.N.Y. 2015) ................................................... 21

*Doninger v. Niehoff*,
  642 F.3d 334 (2d Cir. 2011) ..................................................................... 2

*Ellis v. Provident Life & Accident Ins. Co.*,
  3 F. Supp. 2d 399 (S.D.N.Y. 1998) ......................................................... 8

*Gallegos v. Brandeis Sch.*,
  189 F.R.D. 256 (E.D.N.Y. 1999) ............................................................ 3

*Giardini v. Settanni*,
    159 A.D.3d 874, 70 N.Y.S.3d 57 (2d Dept. 2018).................................................. 20

*Goldberg v. Jacquet*,
    2015 WL 5172939 (S.D.N.Y. Sept. 3, 2015), *aff'd*, 667 F. App'x 313 (2d Cir. 2016) ............ 10

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
    50 N.Y.2d 183, 406 N.E.2d 445 (1980) ...................................................... 24

*In re Chateaugay Corp.*,
    10 F.3d 944 (2d Cir. 1993)..................................................................... 20

*In re Novartis Wage & Hour Litig.*,
    593 F. Supp. 2d 637 (S.D.N.Y. 2009).............................................. 11, 14

*Jankousky v. N. Fork Bancorporation, Inc.*,
    2011 WL 1118602 (S.D.N.Y. Mar. 23, 2011) ........................................ 10

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
    52 N.Y.2d 105, 417 N.E.2d 541 (1981) ................................................... 7

*Kadden v. VisuaLex, LLC*,
    910 F. Supp. 2d 523 (S.D.N.Y. 2012)..................................................... 16

*Linder v. Innovative Commercial Sys. LLC*,
    127 A.D.3d 670 (1st Dept. 2015) ............................................................ 21

*Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*,

385 F. Supp. 2d 256 (S.D.N.Y. 2005)......................................................... 5

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................ 2

*O'Neill–Marino v. Omni Hotels Mgmt. Corp.*,
    2001 WL 210360 (S.D.N.Y. 2001) ......................................................... 16

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
    582 F. 3d 244 (2d Cir. 2009)..................................................................... 2

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997)......................................................................... 2

*Reiseck v. Universal Commc'ns of Miami, Inc.*,
    591 F.3d 101 (2d Cir. 2010)..................................................................... 11

*Schwind v. EW & Assocs., Inc.*,
    357 F. Supp. 2d 691 (S.D.N.Y. 2005)..................................................... 15

*SCR Joint Venture L.P. v. Warshawsky*,
   559 F.3d 133 (2d Cir. 2009) ........................................................................... 2

*Sommer v. Federal Signal Corp.*,
   79 N.Y.2d 540, 593 N.E.2d 1365 (1992) ...................................................... 20

*Torres v. Gristede's Operating Corp.*,
   628 F. Supp. 2d 447 (S.D.N.Y. 2008) ........................................................... 22

*Willmott v. Giarraputo*,
   5 N.Y.2d 250, 157 N.E.2d 282 (1959) ............................................................ 7

*Wimbush v. L.I.C. Pet Transp. Inc.*,
   2018 WL 3388296 (S.D.N.Y. July 12, 2018) ................................................ 20

*Wolff v. Rare Medium, Inc.*,
   171 F. Supp. 2d 354 (S.D.N.Y. 2001) ........................................................... 24

*Wrobel v. County of Erie*,
   692 F.3d 22 (2d Cir. 2012) ............................................................................. 2

*Yu v. Knighted LLC*,
   2017 WL 666118 (S.D.N.Y. Feb. 16, 2017) ................................................ 14

*Zaitsev v. Salomon Bros.*,
   60 F.3d 1001 (2d Cir. 1995) ......................................................................... 21

*Zubair v. EnTech Eng'g P.C.*,
   808 F. Supp. 2d 592 (S.D.N.Y. 2011) ........................................................... 12

**Statutes**

29 U.S.C. §201 .................................................................................................... 9

29 U.S.C. 213(a)(1) ........................................................................................... 11

29 USC §206(a)(1) ............................................................................................... 8

29 USC §215(a)(3) ............................................................................................. 22

CPLR §213 ......................................................................................................... 23

CPLR §214(3) ..................................................................................................... 23

NYLL §195(1)(a) ............................................................................................... 19

NYLL §195(3) .................................................................................................... 19

NYLL §198(1-d) ........................................................................................................ 19

NYLL §215 .............................................................................................................. 22

NYLL §663(3) ......................................................................................................... 23

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................. 2

Fed. R. Civ. P. 56(c)(1)(A) ........................................................................................ 2

**Regulations**

12 N.Y.C.R.R. §142-2.2 ............................................................................................ 11

12 NYCRR §142-2.3 ................................................................................................ 13

29 C.F.R. §541.200 .................................................................................................. 11

29 C.F.R. §541.200(a) .............................................................................................. 14

29 C.F.R. §541.601(c) .............................................................................................. 14

29 C.F.R. §541.601 .................................................................................................. 11

29 C.F.R. §541 ........................................................................................................ 13

## PRELIMINARY STATEMENT

Defendants/Counterclaimants, CEMD Elevator Corp. d/b/a City Elevator ("CEMD"), Mitchell Hellman ("Hellman"), Stephan Diemer ("Diemer") and Carl Alongis ("Alongis") (collectively, the "Defendants") move pursuant to Fed. R. Civ. P. 56 for summary judgment, seeking dismissal of the nine causes of action set forth in the second amended complaint ("SAC") of plaintiff, Steven Tilchen ("Plaintiff"), wherein Plaintiff seeks unpaid commissions, overtime, statutory damages for wage notices, and damages for retaliation.

Particularly, Plaintiff, as already determined by this Court, cannot demonstrate an enforceable contractual right to commissions.  Further, Plaintiff's position as the Director and, then subsequently, Vice President of Sales in which he earned nearly $200,000 annually exclusive of lucrative perks, and spent 90 to 95 percent of his time servicing CEMD's customers, was exempt from overtime. Indeed, Plaintiff was a highly compensated employee and administrative employee.  Furthermore, Plaintiff's allegations of wage notice violations and retaliation are equally baseless as a matter of law.  Additionally, Plaintiff cannot maintain a claim against Alongis, individually, because Alongis' interest in CEMD terminated in 2012, five years prior to Plaintiff filing this action.  Therefore, Plaintiff's claims against Alongis are untimely.

Defendants also seek summary judgment on their counterclaim against Plaintiff.  The records produced by Plaintiff demonstrate that while employed as a principal at Keystone Iron & Wire Company ("Keystone"), Plaintiff tortiously induced 16 of CEMD's customers to cancel their contracts with CEMD and to sign agreements with Keystone.  As a result of Plaintiff's tortious actions, Defendants have sustained approximately $360,000 in actual damages.

## STATEMENT OF THE FACTS

For the sake of brevity, the Court is respectfully referred to Defendants' Local Rule 56.1 Disclosure Statement and Affidavit of Mitchell Hellman, President of CEMD, for a recitation of the facts, which are incorporated herein.

## LEGAL ANALYSIS

### I.   STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011). A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); accord *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).

The moving party bears the initial burden of identifying those portions of the record that demonstrate "the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), following which the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The parties can support their claims with documents, stipulations, affidavits, or other discovery materials. *See* Fed. R. Civ. P. 56(c)(1)(A). However, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F. 3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)). Defendants

submit that the marshalling of admissible evidence adduced during discovery fails to support any of Plaintiff's claims or otherwise raise a genuine issue of material fact.  For this reason, judgment should be entered in Defendants' favor.  Further, the evidence adduced during discovery demonstrates that Plaintiff - who misappropriated sixteen contracts with Defendants' customers - tortiously interfered with Defendants' contracts; therefore, summary judgment should be awarded to Defendants on their counterclaim for tortious interference with contracts.

## II.   PLAINTIFF'S CLAIM FOR UNPAID COMMISSIONS UNDER THE NEW YORK LABOR LAW FAIL AS A MATTER OF LAW BECAUSE THERE IS NO CONTRACT FOR COMMISSIONS.

For his second cause of action,[1] Plaintiff seeks unpaid commissions under Section 190 of the New York Labor Law ("NYLL").[2]  This claim should be dismissed because Plaintiff fails to meet his burden demonstrating that he is entitled to receive commissions.

Plaintiff fails to establish any contractual agreement with CEMD entitling him to commissions.  In order "to assert any substantive claim for wages under article 6 [of the NYLL], a plaintiff must have an enforceable contractual right to those wages." *Gallegos v. Brandeis Sch.*, 189 F.R.D. 256, 259 (E.D.N.Y. 1999).  This Court already rejected Plaintiff's application to amend his SAC to add a claim for breach of contract, holding that:

> [I]t appears that the proposed additional materials fail to state a claim. It is axiomatic that a contract's validity depends on the alleged agreement between the parties being specific enough to ascertain the parties' intention with reasonable certainty. Additionally, a writing may be necessary—and there is none—to comply with New York law.

*See* Court's Order dated July 10, 2018 ("July Order") [Doc. No. 92].

---

[1] Plaintiff's first cause of action will be discussed in Section III, *infra*, at 8.

[2] *See* SAC, attached as Exhibit A to the Declaration of Elbert F. Nasis, Esq., sworn to on February 5, 2019 ("Nasis Dec.") at ¶¶ 110-118.

Plaintiff's failure to establish an enforceable contract entitling him to receive commissions renders his claim for unpaid commissions under the NYLL unenforceable as a matter of law.

### A.   Plaintiff Does Not Have An Enforceable Contractual Right to Commissions.

Plaintiff alleges that he "was a salesperson who received salary and commission."[3]   At his deposition, when questioned about his claim for commissions, Plaintiff relied on a sixteen year old sticky note, with no indicia of a contract, and a conversation he had with Hellman, which occurred prior to the start of his employment.[4]   Hellman, when questioned about this same sticky note and conversation, had a completely different intention for his writings, explaining that the sticky note referenced a commission plan at Plaintiff's and his former employer, Millar Elevator, and was simply used as a gauge to determine Plaintiff's proposed salary (which was approximately $150,000 – an amount Plaintiff exceeded during all 13 years he was employed by CEMD).[5]   However, even if Plaintiff's account of this meeting is presumed true for purposes of summary judgment, he still fails to demonstrate that the parties entered into an enforceable agreement entitling him to receive commissions.

Under New York law, a contract must be sufficiently "definite" to be enforceable. *See, e.g., Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 609 (S.D.N.Y. 2010).   This Court previously held that Plaintiff failed to present an agreement that is sufficiently definite to present an enforceable contract entitling him to receive commissions. *See* July Order [Doc. No. 92].

Particularly, Plaintiff has not and cannot demonstrate a method by which his putative commissions were to be calculated.   The amount of compensation to be paid is considered a

---

[3] *See* Nasis Dec., Exhibit A, SAC at ¶112.
[4] *See* Deposition Transcript of Plaintiff held on November 17 and 20, 2017 ("Plaintiff Tr."), which is annexed as Exhibit I to the Nasis Dec. at 190-207; D. 56.1 at ¶¶51 through 65.
[5] *See* Deposition Transcript of Mitchell Hellman ("Hellman Tr.") attached as Exhibit D to the Nasis Dec. at 92:21-23; 94:20-25, 95:2-3; 97:21-25.

material term in a contract that requires definiteness.  *See Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2005) ("Price or compensation are material terms in a contract requiring definiteness.").

Here, the parties never agreed to any commission schedule much less a precise commission rate applicable for each specific type of contract identified on the sticky note.  It is therefore impossible to objectively fix any amount allegedly due to Plaintiff.  Accordingly, there can be no claim for wages because Plaintiff fails to demonstrate methodology, formula, or external measure to determine objectively what commission was agreed to, if any, which would in turn evidence that he has a contractual right to such payments. *See Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.*, 181 A.D.2d 551, 551-52 (1st Dept. 1992) ("As no objective method or formula was provided for determining a commission, the exclusive sales contract was merely an agreement to agree and was unenforceable.") (internal citations omitted).

In this case, at his deposition, Plaintiff was questioned in detail about the meaning of each category of sales for which he allegedly was entitled to receive commissions.  Plaintiff failed to provide a method upon which CEMD – or this Court – could objectively calculate his supposed commissions.[6]  For example, in discussing alleged commissions on maintenance contracts and referring to the sticky note, Plaintiff testified as follows:

> Q:   8 percent up to sales plan, what did this line indicate?
> A:   The percentage of commission up to the sales plan.
> Q:   What was the sales plan?
> A:   Never gave me one.
> Q:   I didn't ask -- I asked what is a sales plan?
> A:   I don't know.  I never got one.
> Q:   Did you have any discussions about sales plan?
> A:   Never.[7]
>
>                              …

---

[6] *See* Nasis Dec., Exhibit I, Plaintiff Tr. at 190-207.
[7] *See Id.* at 193:7-18.

> Q:   Going to the next line, "After plan double," what does that
>       mean?
> A:   I have no idea.  He never gave me a plan.
> Q:   Would this plan connect to the sales plan reference in the
>       eight percent annual?
> A:   I would assume so.
> Q:   Did you have any discussions with Mr. Hellman at the time
>       this paper was made about what the meaning of, "After plan
>       double"?
> A:   There was never any conversation about any sales plan.[8]

When discussing commissions for repairs, Plaintiff similarly testified as follows:

> Q:   Can you read the next line?
> A:   "Repairs."
> Q:   What does it say?
> A:   (Reading)  Three percent up to plan, six percent over plan.
> Q:   What does that mean?
> A:   I get paid three percent up to plan and then six percent if I get
>       over the plan.
> Q:   What is the plan?
> A:   I have no idea. He never gave me a plan.[9]

Regarding Modernization and New Installation contracts, Plaintiff testified as follows:

> Q:   What does one percent up to plan mean?
> A:   I don't know.  I never got a plan.
> Q:   What did you understand it to mean at the time this was
>       written?
> A:   That I was going to eventually receive a plan.[10]

Regarding commissions on renewals, Plaintiff testified as follows:

> Q:   What is underneath Mod/NI?
> A:   Renewals.
> Q:   Is there anything written next to it?
> A:   It was left open.
> Q:   Did you have any discussions with Mr. Hellman at that time
>       about what that meant?
> A:   Kind of left open.
> Q:   What does that mean, kind of left open?
> A:   I guess it was going to come along the plan I never got.

---

[8] *See Id.* at 201:3-13.
[9] *See Id* at 202:1-10.
[10] *See Id.* at 203:3-8.

> Q:   When you say the plan you are going to get, was it your understanding you would receive further -- you would receive another agreement after this?
> A:   I certainly would have received something after this.
> Q:   What did you anticipate receiving?
> A:   I don't know.  I didn't receive it.[11]

For every category of commissions Plaintiff alleges he is entitled to receive -- maintenance, repairs, modernization/new installation and renewals -- no enforceable agreement was agreed upon either during his pre-employment meeting or at any point in time thereafter because there was never an agreed upon method to calculate commissions for any category.  At best, the conversation and sticky note that Plaintiff erroneously relies upon is no more than "an agreement to agree," which is unenforceable as a matter of law. *See Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109, 417 N.E.2d 541, 543 (1981) (stating "it is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable."); *Willmott v. Giarraputo*, 5 N.Y.2d 250, 253, 157 N.E.2d 282, 283 (1959) (holding that "[i]f a material element of a contemplated contract is left for future negotiations, there is no contract enforceable under the statute of frauds or otherwise.").

Without an enforceable agreement, Plaintiff's second cause of action asserting unpaid wages under the NYLL fails as a matter of law.

### B.  A Written Agreement Does Not Exist to Satisfy the Statute of Frauds.

Plaintiff's claim for unpaid commissions fails because a written agreement specifying how and when commissions would accrue does not exist.  Indeed, a written agreement is required for there to be an enforceable agreement under the statute of frauds.

---

[11] *See Id*. at 203:9-25; 204:1.

One category of commissions that Plaintiff seeks is for renewals.  This Court determined that, "agreements to pay commissions on premiums paid on insurance renewals are subject to the Statute of Frauds." *See Ellis v. Provident Life & Accident Ins. Co.*, 3 F. Supp. 2d 399, 409–10 (S.D.N.Y. 1998).  In *Apostolos v. R.D.T. Brokerage Corp.*, 159 A.D.2d 62, 65, 559 N.Y.S.2d 295 (1st Dept. 1990), the court found that an oral agreement "to pay plaintiff a percentage of the commission earned every time one of the policies which plaintiff had originally placed with defendant was renewed" violated the statute of frauds.

It is well established that "if part of an entire contract is void under the Statute of Frauds, the whole contract is void." *Apostolos*, 159 A.D.2d at 65; *see also De Beerski v. Paige*, 36 N.Y. 537, 539 (1867).  Accordingly, because payments for commissions on renewals must be in writing, the entire commission agreement must be in writing to satisfy the statute of frauds.

Plaintiff acknowledges that he "never received a written commission agreement from Defendants."[12]  This Court previously determined that Plaintiff failed to present a writing that complies with New York law. *See* July Order [Doc. No. 92].  Because there is no writing that satisfies the statute of frauds, Plaintiff has no contractual right to commissions, and, therefore, his claim for unpaid commissions under the NYLL fails as a matter of law.

## III.    PLAINTIFF'S CLAIM FOR "UNLAWFUL DEDUCTIONS" UNDER THE FLSA FAILS AS A MATTER OF LAW AS WELL.

For his first cause of action, Plaintiff claims "unlawful deductions" from his wages under the Fair Labor Standards Act ("FLSA").[13]  This claim, however, fails as a matter of law.  It is well established that the FLSA only provides for payment of minimum wage and, when applicable, overtime. *See* 29 USC §206(a)(1).  Accordingly, as long as an employee was paid at least minimum wage, and either was paid overtime or exempt from the FLSA's

---

[12] *See* Nasis Dec., Exhibit A, SAC at ¶83.
[13] *See Id.* at ¶¶ 101-109.

overtime requirements, there is no violation of the FLSA. *See Caci v. Wiz of Lake Grove, Inc.*, 267 F. Supp. 2d 297, 300 (E.D.N.Y. 2003).  Because the evidence (paystubs and testimony)[14] establishes that Plaintiff was paid in excess of $200,000 annually, which was substantially more than minimum wage, Plaintiff is no minimum wage claimant.  Additionally, as stated in Section IV, *infra*, at 8, Plaintiff is exempt from receiving overtime. Thus, the FLSA does not apply.

Indeed, claims for regular or straight time wages that are above and beyond the minimum wage "fall outside of the FLSA's scope." *See DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 519 (E.D.N.Y. 2011).  Here, when questioned about his FLSA claim, Plaintiff acknowledged that his "FLSA claim" was duplicative of his claim for unpaid commissions.[15]  Commissions are not to the type of wages that are recoverable under the FLSA. *See Id.*  Further, as discussed in Point II, *supra,* at 3, Plaintiff fails to demonstrate that he is entitled to receive these commissions.

Plaintiff attempts to circumvent the FLSA's prohibition against recovery of straight-time pay by masking his first cause of action as a claim for "unlawful deductions from payroll."[16] Defendants note, however, that Plaintiff fails to identify any provision of the FLSA that permits an employee to recover for "unlawful deductions."  In fact, nowhere does the FLSA give a cause of action for unlawful deduction. *See* 29 U.S.C. §201, *et. seq.*

Further, even if the FLSA did provide a private right of action for improper deductions, Plaintiff's novel efforts to create a cause of action to recover alleged unpaid commissions under the FLSA by labeling these non-payments as "unlawful deductions" still does not provide Plaintiff with an avenue of relief.  Looking to cases interpreting Section 193 of the NYLL, which

---

[14] *See* Defendants'/Counterclaimants Undisputed Statement of the Facts ("D. 56.1") at ¶¶52 through 66; Paystubs attached as Exhibit L to the Nasis Dec.
[15] *See* Deposition Transcript of Plaintiff ("Plaintiff Tr."), attached as Exhibit I to the Nasis Dec. at 498:8-11.
[16] *See* Nasis Dec., Exhibit A, SAC at ¶¶107-108.

provides certain employees with a private right of action to recover improperly made deductions, for guidance, in *Goldberg v. Jacquet*, 2015 WL 5172939, at *3 (S.D.N.Y. Sept. 3, 2015), *aff'd,* 667 F. App'x 313 (2d Cir. 2016), this Court when awarding summary judgment in defendants' favor found failing to receive wages is not an "unlawful deduction."  This Court stated that although the plaintiff "did not receive wages to which he is entitled…he did not have wages deducted in the manner intended to be prohibited by § 193." *Id.* (Crotty, J.); *see also Jankousky v. N. Fork Bancorporation, Inc.*, 2011 WL 1118602, at *4 (S.D.N.Y. Mar. 23, 2011) (Crotty, J.) (dismissing a claim under NYLL §193 where an employer and employee disputed how to calculate incentive payments, holding that "[t]his type of dispute does not fall within NYLL § 193(1)…. Until the wages are agreed upon, there can be no deduction within the meaning of the NYLL.").

Similar to the plaintiffs in *Goldberg* and *Jankousky*, Plaintiff's claim is nothing more than a dispute over what commissions/wages Plaintiff was entitled to receive, not an "unlawful deduction" from agreed upon wages.  Therefore, Plaintiff's first cause of action under the FLSA for "unlawful deductions" fails and should be dismissed as a matter of law.

### IV.   PLAINTIFF IS EXEMPT FROM OVERTIME REQUIREMENTS MANDATED BY THE FLSA AND NYLL AS A HIGHLY COMPENSATED AND ADMINISTRATIVELY EXEMPT EMPLOYEE.

For his third and fourth causes of action, Plaintiff seeks unpaid overtime under the FLSA and NYLL.[17]  Plaintiff's claims fail as a matter of law because Plaintiff is exempt from the overtime requirements of both statutes as either a highly compensated employee or an administrative employee.

The FLSA and NYLL provide that certain categories of employees are exempt from the FLSA and NYLL's overtime requirements.  One set of exemptions is referred to as the "white

---

[17] *See* Nasis Dec., Exhibit A, SAC at ¶¶119-129.

collar exemptions" as set forth in Section 213(a)(1) of the FLSA.  As explained in the regulations

promulgated in 2004 by the Department of Labor ("DOL"):

> [T]he "white collar" exemptions owe their existence to the fact that
> the employees they were meant to cover "typically earned salaries
> well above the minimum wage, and they were presumed to enjoy
> other compensatory privileges such as above average fringe
> benefits and better opportunities for advancement...."69 Fed.Reg.
> at 22124.  The DOL Final Rule also recognizes that the work done
> by these employees "was difficult to standardize to any time frame
> ... making compliance with the overtime provisions difficult...."

*In re Novartis Wage & Hour Litig.*, 593 F. Supp. 2d 637, 649 (S.D.N.Y. 2009),*vacated and*

*remanded on other grounds,* 611 F.3d 141 (2d Cir. 2010).

Highly compensated employees who: "(1) have total annual compensation of at least one

hundred thousand dollars ($100,000); (2) 'customarily and regularly perform *any one or more* of

the exempt duties or responsibilities of an executive, administrative, or professional employee;'

and (3) have a 'primary duty [that] *includes* performing office or non-manual work'" are exempt

from the overtime requirements of the FLSA and NYLL. *See Bellone v. Kraft Power Corp.,* 2016

WL 2992126, at *4 (E.D.N.Y. May 23, 2016) (emphasis in the original); 29 C.F.R. 541.601.

For an employee to qualify under the administrative exemption, the employee must be:

> (1) Compensated on a salary or fee basis at a rate of not less than
> $455 per week…; (2) Whose primary duty is the performance of
> office or non-manual work directly related to the management or
> general business operations of the employer or the employer's
> customers; and (3) Whose primary duty includes the exercise of
> discretion and independent judgment with respect to matters of
> significance.

29 C.F.R. 541.200.

The highly compensated and administrative exemptions have been recognized by courts

to also apply to the NYLL's overtime requirements. *See* 12 N.Y.C.R.R. §142-2.2; *Reiseck v.*

*Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010) ("The NYLL, too,

mandates overtime pay and applies the same exemptions as the FLSA."); *see also Zubair v. EnTech Eng'g P.C.,* 808 F. Supp. 2d 592, 600 (S.D.N.Y. 2011).  Plaintiff, who earned in excess of $200,000 annually and whose primary duties were to service and manage CEMD's client base, is exempt as both a highly compensated and administrative employee.

### A. Plaintiff Earned Enough Money To Satisfy the Salary Requirements of the Highly Compensated and Administrative Employee Exemptions.

#### 1. *Plaintiff Earned in Excess of $100,000 Annually.*

Plaintiff earned well in excess of $100,000 annually from 2004 through September 1, 2016 when his employment with CEMD terminated.[18]  Indeed, for the time period at issue in this litigation (January 2011 through August 31, 2016), Plaintiff's annual earnings, *exclusive of his generous perks*, exceeded $200,000, and are summarized as follows:[19]

| Year | Salary | Bonus | Total Compensation |
|------|--------|-------|--------------------|
| 2011 | $70,200.00 | $133,000.00 | $203,200.00 |
| 2012 | $162,936.00 | $84,000.00 | $246,936.00 |
| 2013 | $185,016.00 | $72,000.00 | $257,016.00 |
| 2014 | $194,575.00 | $72,000.00 | $266,575.00 |
| 2015 | $185,016.00 | $102,000.00 | $287,016.00 |
| 2016 | $130,220.00 | $48,000.00 | $178,220.00[20] |

In addition to these earnings, starting in and around 2012 until his employment with CEMD ended with its asset sale to KONE, Inc. ("KONE") on August 31, 2016, Plaintiff received an annual membership to the Glen Head County Club from CEMD as part of his total compensation package.[21]  Plaintiff was also reimbursed for not just any car, but a Mercedes Benz

---

[18] While the NYLL has a six-year statute of limitations and FLSA has at most a three-year statute of limitations, Plaintiff's salary history going back to 2004 is set forth in paragraph 17 of the Hellman Aff. to illustrate that at all times, Plaintiff qualified as a highly compensated employee.

[19] *See* Nasis Dec., Exhibit I, Plaintiff Tr. at 253-271; Plaintiff's Paystubs, attached as Exhibit K to the Nasis Dec.; D. 56.1 at ¶¶ 60-65.

[20] Payment for January 2016 through August 31, 2016.

[21] *See* Nasis Dec., Exhibit D, Hellman Tr. at 239:6-20; 59:5-6; 61:12-16; D. 56.1 at ¶74.

S550,[22] and was reimbursed for all of his gas, tolls and parking, whether or not business related.[23]   CEMD paid for Plaintiff's cellphone and cellphone plan.[24]   Plaintiff also maintained a company credit card.[25]   These generous perks and salaries are more than double, if not triple, the $100,000 salary required to qualify as a highly compensated employee, and evidence the compensatory privileges and above average fringe benefits attributable to the "white collar exemptions" noted by the Department of Labor.

### 2.   *Plaintiff Satisfies the Salary Requirements of the Administrative Exemption.*

Plaintiff's generous compensation also exceeded the salary threshold required to qualify as an administrative employee under the FLSA and NYLL.  From 2011 through 2016, the salary requirement under the FLSA for white collar exemptions was $455 per week ($23,660 annually). *See* 29 C.F.R. 541.  In New York, to qualify under the administrative exemption, an employee's annual salary had to meet or exceed the following thresholds:[26]

| Year | New York State Exemption (Weekly) | New York State Exemption (Annual) |
|------|-----------------------------------|-----------------------------------|
| 2011 | $543.75 | $28,275.00 |
| 2012 | $543.75 | $28,275.00 |
| 2013 | $543.75 | $28,275.00 |
| 2014 | $600.00 | $31,200.00 |
| 2015 | $656.25 | $34,125.00 |
| 2016 | $675.00 | $35,100.00 |

Plaintiff's earnings exceeded the salary requirements under the FLSA and NYLL.

---

[22] *See* D. 56.1 at ¶68.
[23] *See Id.* at ¶69.
[24] *See Id.* at ¶70.
[25] *See Id.* at ¶71.
[26] *See* 12 NYCRR §142-2.3.  Given that Plaintiff's claims are severed by a six-year statute of limitations under the NYLL, this chart only reflects the six years preceding Plaintiff's filing of this action. *See* NYLL §663(3).

**B. Plaintiff Meets the Duty Requirements to Satisfy the Highly Compensated Employee and Administrative Exemption.**

As the Director and then Vice President of Sales for CEMD, Plaintiff performed exempt duties of an administrative employee.  The DOL defines an administrative employee as an employee whose primary duties include: (1) "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and (2) "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. 541.200(a).

As for highly compensated employees, "[a] high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." *Yu v. Knighted LLC*, 2017 WL 666118, at fn 5 (S.D.N.Y. Feb. 16, 2017), *citing* 29 C.F.R. 541.601(c).  Accordingly, as long as Plaintiff satisfies at least one of the duty requirements of a white-collar employee, he is exempt.  Analyzing Plaintiff's role as at CEMD under either the administrative exemption or the more relaxed highly compensated employee exemption, it is clear that Plaintiff is exempt from the FLSA and NYLL's overtime requirements.

*1. Plaintiff Conducted Office or Non-Manual Work Directly Related to Management or General Business Operations.*

Under the administrative exemption, "an employee must perform work directly related to assisting with the running or servicing of the business" to qualify as exempt. 29 C.F.R. 541.201(a).  Duties that fall within this exemption include "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." *In re Novartis Wage & Hour Litig.*, 593 F. Supp. 2d at 645.

In *Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 705 (S.D.N.Y. 2005), this Court held that plaintiff, who was the Vice President of Sales, was exempt under the administrative exemption where Plaintiff's work:

> consisted of being on-site with clients: "[s]elling, understanding their needs, potentializing resources" and handling client relations and client services. (Schwind Dep. at 69.) Plaintiff acted as a liaison between EWA and most of its major clients. In addition, plaintiff proposed business deals to clients and negotiated many contracts. (*Id.* at 74.) Plaintiff also directed fellow employees in accomplishing the goals of the company. (*Id.* at 31–33.)

Similarly, in *Darveau v. Detecon, Inc.*, 515 F.3d 334, 338–39 (4th Cir. 2008), plaintiff who was employed as the Director of Sales was exempt because:

> Darveau played a significant role in projecting Detecon's "public face" and carrying its services to the telecommunications industry. In this capacity, Detecon gave Darveau wide latitude to use his "lengthy industry experience and contacts." The company empowered him to approach current and potential clients, discern the possible range of their wireless telecommunications needs, and then relay this information to the technical staff at Detecon's main office. … Darveau would work with other members of Detecon's management team to negotiate some of the terms of the contract and conclude the sale.

Here, Plaintiff's role, similar to the Vice President of Sales in *Schwind* and the Director of Sales in *Darveau*, was intricately tied to the day-to-day operations of CEMD.

Plaintiff's day-to-day work focused on servicing CEMD's customers.  Particularly, when questioned about his role at CEMD, Plaintiff explained that for 90 to 95 percent of the time he was "busy doing everything I needed to do such as following up on my work to take care of my customers, violations, repair proposals, consultant specs."[27]  With respect to managing existing clients, when a customer with an existing service contract had an issue with either a violation or

---

[27] *See* Nasis Dec., Exhibit I, Plaintiff Tr. at 104:1-9.

an elevator, they contacted Plaintiff for a solution.[28]  Additionally, Plaintiff determined whether

the issue was covered by the existing service contract or if it required work that was outside the

contract.[29]  For covered work, Plaintiff worked with CEMD's other departments to make sure

that the work was completed.[30]  For work not covered by a service contract, Plaintiff would have

to create a repair proposal, have the work approved, and then coordinate with CEMD's other

departments to make sure that the work was completed.[31]

Plaintiff was also responsible for reviewing invoices before they were issued to clients,

ensuring that the work was properly billed.[32]  Once invoices were sent out, Plaintiff was also

responsible for collecting payments from the customers for outstanding receivables, and he had

the ability to negotiate pricing with the clients.[33]  To facilitate his endeavors, Plaintiff created

"job booking sheets," which included "contact information. Instructions as far as billing and

insurance requirements and maintenance, [and] warranty service" information.[34]  Plaintiff

included his job booking sheets with every contract he negotiated and executed on CEMD's

behalf, and same would be disseminated throughout the office.[35]  Plaintiff's responsibilities were

commensurate with the duties of an employee exempt under the administrative exemption. *See,*

*e.g., O'Neill–Marino v. Omni Hotels Mgmt. Corp.,* 2001 WL 210360, at *8 (S.D.N.Y. 2001)

(plaintiff exempt under the administrate exemption where plaintiff "was responsible for

negotiating services with clients,...assisting clients during their meetings, and coordinating

various...departments in order to properly service the client"); *Kadden v. VisuaLex, LLC,* 910 F.

Supp. 2d 523, 541 (S.D.N.Y. 2012) ("It is true that an employee whose primary duties were

---

[28] *See* Hellman Aff. at ¶26; D. 56.1 at ¶81.
[29] *See* Hellman Aff. at ¶26; D. 56.1 at ¶82.
[30] *See* Hellman Aff. at ¶26; D. 56.1 at ¶83.
[31] *See* Hellman Aff. at ¶27; D. 56.1 at ¶84; Nasis Dec., Exhibit I, Plaintiff Tr. at 104:11-18; 109:13-23.
[32] *See* Hellman Aff. at ¶27; D. 56.1 at ¶85.
[33] *See* Hellman Aff. at ¶27; D. 56.1 at ¶86.
[34] *See* Nasis Dec., Exhibit I, Plaintiff Tr. at 85:10-25; D. 56.1 at ¶88.
[35] *Id.*

maintaining client relations, securing business, and assisting with VisuaLex's marketing…would qualify as an exempt administrative employee.")

Plaintiff also met with customers to discuss billing issues, and to smooth over any issues between the customer and CEMD's service and/or construction departments.[36]   As discussed by Andy Koontz, "[Plaintiff] would visit them [customers], call them, they would call him with any issues, with any needs for proposals or extra work that needed to be done, or to schedule work perhaps in some cases."[37]   Plaintiff would also meet with customers both old and new to discuss the information needed to prepare bids for new contracts.[38] *See, e.g., Schwind,* 357 F. Supp. 2d at 705; *Darveau*, 515 F.3d at 338–39.

Plaintiff's role, which by his own admission required between 90 and 95 percent of his time dedicated to servicing CEMD's existing clients, was directly related to Plaintiff's assistance with the running or servicing of CEMD's business.

2. *Plaintiff Exercised Discretion and Independent Judgment as Director and Vice President of Sales.*

Plaintiff also qualifies as a highly compensated and administrative employee because he exercised discretion and independent judgment.   When considering the exercise of discretion and independent judgment, the DOL has provided a non-exhaustive list of factors to consider; *to wit*:

> whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; ... whether the employee has authority to waive or deviate from established policies and procedures without prior approval; ... whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business

---

[36] *See* Hellman Aff. at ¶; Nasis Dec., at Exhibit I, Plaintiff Tr. at 105:10-24.
[37] *See* Transcript of Andrew Koontz, ("Koontz Tr.") attached as Exhibit G to the Nasis Dec. at 20:16-20.
[38] *See* Nasis Dec., Exhibit I, Plaintiff Tr. at 114:16-24.

> objectives; ... and whether the employee represents the company in
> handling complaints, arbitrating disputes or resolving grievances.

*Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 474 (S.D.N.Y. 2008).

Plaintiff exercised a wide latitude of independent judgment and discretion in his roles as Director and Vice President of Sales. Notably, Plaintiff negotiated his own contracts, having the authority to execute contracts valued at up to $1 million.[39] Plaintiff set his own pricing on approximately 90 percent of his jobs[40] and collaborated with the sales staff to set pricing on larger jobs.[41] Furthermore, Plaintiff independently met with CEMD's clients and had the discretion to trouble shoot and address his clients' problems without input from CEMD's executives. Accordingly, Plaintiff exercised the requisite discretion and independent judgment.

Plaintiff, as an employee who: (i) earned in excess of $200,000; (ii) received generous benefits; (iii) was involved in the day-to-day operations of CEMD; and (iv) had the ability to exercise discretion and independent judgment, is exempt from the overtime requirements of the FLSA and NYLL as a highly compensated and administrative employee. Accordingly, Plaintiff's third and fourth causes of action seeking overtime wages should be dismissed.

## V.   PLAINTIFF'S CLAIM FOR RECORD KEEPING VIOLATIONS UNDER THE NYLL FAILS AS A MATTER OF LAW

For his fifth cause of action, Plaintiff alleges record keeping violations.[42] Although not specified, Defendants presume that Plaintiff is referring to the wage notice and wage statements required by NYLL §195. Notwithstanding, Plaintiff's claim fails as a matter of law because: (i) Defendants were not required to provide the wage notice required by NYLL §195(1) because

---

[39] *See* Nasis Dec., Exhibit D, Hellman Tr. at 275:13-17; 276:2-6; D. 56.1 at ¶101.
[40] *See* Nasis Dec., Exhibit D, Hellman Tr. at 273:15-25; 274:17-18; D. 56.1 at ¶97.
[41] *See* Nasis Dec., Exhibit G, Koontz Tr. at 18:13; D. 56.1 at ¶98.
[42] *See* Nasis Dec., Exhibit A, SAC at ¶¶130-136.

Plaintiff's employment with CEMD started prior to the enactment of applicable notice requirements; and (ii) Plaintiff received weekly paystubs as required by NYLL §195(3).

Plaintiff began working for CEMD in May 2003.[43]  The Wage Theft Prevention Act, which "require[d] every employer to provide its employees a notice at the time of hiring" did not take effect until 8 years later on April 9, 2011. *See* NYLL § 195(1)(a).  Because Plaintiff became employed by CEMD in May 2003, eight years before the Wage Theft Prevention Act took effect, CEMD was not required to provide him with a wage notice at the time he was hired. *See, e.g, Guan Ming Lin v. Benihana New York Corp.*, No. 2012 WL 7620734, at *2 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted,* 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013).

As to Plaintiff's claim that Defendants failed to provide him with wage statements, this, too, fails as a matter of law.  NYLL §195(3) provides that each employer "furnish each employee with a statement with every payment of wages."  Plaintiff was provided with a weekly paystub that contained all the information required by NYLL §195(3).[44]  Further, as Plaintiff was paid all wages that he was entitled to earn, even if there was an infirmity in any pay statements (even though there were none), Plaintiff may not recover any damages for any technical deficiencies. *See* NYLL §198(1-d).[45]

Plaintiff's claim for damages for failing to receive wage notices pursuant to NYLL §195(1) and wage statements pursuant to NYLL §195(3) thus fails as a matter of law.

## VI.   PLAINTIFF'S CONVERSION CLAIM FAILS AS A MATTER OF LAW.

For his sixth cause of action, Plaintiff alleges that Defendants committed conversion having "exercised control over Plaintiff's earned wages and intentionally interfered with

---

[43] *See* Nasis Dec., Exhibit I, Plaintiff Tr. at 26:25; D. 56.1 at ¶33.
[44] *See* Hellman Aff. at ¶18; Nasis Dec., Exhibit K, Paystubs; D. 56.1 at ¶52.
[45] NYLL §198(1-d) provides, in pertinent part, that "it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article…to the employee who was not provided statements as required by subdivision three of section one hundred ninety-five of this article."

Plaintiff's right to possession or use of his earned wages by refusing to provide the full amount of wages earned to Plaintiff."[46]  To prevail on a claim for conversion, Plaintiff must demonstrate: "(1) legal ownership or an immediate right of possession to an specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of plaintiff's right." *Giardini v. Settanni*, 159 A.D.3d 874, 875, 70 N.Y.S.3d 57, 58 (2d Dept. 2018).  Here, as detailed in Point II, *supra*, at 3, Plaintiff fails to demonstrate an enforceable contractual right to commissions.  Accordingly, Plaintiff has no legal ownership or entitlement to any putative commissions. Further, Plaintiff cannot maintain a claim for conversion because it is in the nature of a breach of contract. *See In re Chateaugay Corp.,* 10 F.3d 944, 958 (2d Cir. 1993) ("It is also settled under New York law that a tort claim will not arise 'where plaintiff is essentially seeking enforcement of the bargain.'"), c*iting Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 552, 583 N.Y.S.2d 957, 961, 593 N.E.2d 1365 (1992). Therefore, Plaintiff's claim for conversion of these putative commissions fails as a matter of law.

## VII.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS DUPLICATIVE OF HIS NYLL CLAIM AND, THEREFORE, FAILS AS A MATTER OF LAW.

For his seventh claim for relief, Plaintiff again seeks payment of his putative commissions, alleging that "Defendants have been unjustly enriched" at Plaintiff's expense.[47]  Because Plaintiff's claim for unjust enrichment is duplicative of his FLSA and NYLL claims for unpaid wages, it fails as a matter of law. *See Wimbush v. L.I.C. Pet Transp. Inc.*, 2018 WL 3388296, at *2 (S.D.N.Y. July 12, 2018) (upholding a report and recommendation denying damages for plaintiff's "unjust enrichment claim on the grounds that it is duplicative of [his] FLSA claim.") Further, Plaintiff cannot attempt to circumvent the fact that the parties never entered into an enforceable contract for alleged commissions by creatively, albeit mistakenly, pleading such as a

---

[46] *See* Nasis Dec., Exhibit A, SAC at ¶143.
[47] *See Id.* at ¶¶154-159.

claim for unjust enrichment. *See Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 682–83 (S.D.N.Y. 2015) (dismissing a claim for unjust enrichment, noting that "a claim for unjust enrichment is 'not available where it simply duplicates, or replaces, a conventional contract ... claim.'"); *Linder v. Innovative Commercial Sys. LLC*, 127 A.D.3d 670, 670-671 (1st Dept. 2015) (finding that plaintiff did not "have a claim for unjust enrichment, where defendants merely retained the amounts that they were not obligated to pay for post-termination commissions.")  Here, where this Court already rejected Plaintiff's efforts to raise a claim for breach of contract [Doc. No. 92], and where, as discussed in Point II, *supra*, at 3, Plaintiff fails to demonstrate an enforceable contractual right to these putative commissions, Plaintiff's claim for unjust enrichment fails as a matter of law.

Additionally, Plaintiff has not demonstrated that his generous compensation, which together with his car allowance and country club membership was nearly $300,000 annually and commensurate with pay received by CEMD's principals, was unreasonable for his services.[48]  To the extent Plaintiff erroneously attempts to support this claim by relying on the incomplete sticky note to value his services, this note has already been deemed unenforceable and therefore cannot serve as evidence of any alleged unjust enrichment. *See Zaitsev v. Salomon Bros.*, 60 F.3d 1001, 1004 (2d Cir. 1995) (holding that "[u]nder New York law, a contract that is unenforceable under the Statute of Frauds is inadmissible as evidence of the reasonable value of services.")

Therefore, Plaintiff's seventh cause of action for unjust enrichment should be dismissed.

---

[48] Indeed, as discussed in paragraph 23 of the Hellman Aff., Plaintiff compensation and perks met, if not exceeded, the compensation received by CEMD's principals.

## VIII.  PLAINTIFF'S EIGHTH AND NINTH CAUSES OF ACTION ALLEGING RETALIATION UNDER THE FLSA AND NYLL HAVE NO BASIS IN LAW OR FACT AND SHOULD BE DISMISSED.

For his eighth and ninth causes of action, Plaintiff alleges that Defendants retaliated against him in violation of the FLSA (29 USC §215(a)(3)) and NYLL (NYLL §215).[49]  "In order to establish a prima facie case of retaliation under the FLSA and NYLL, a plaintiff must show: "(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008).

In this action, Plaintiff fails to present that he engaged in any protected activity, nor does he present any evidence that Defendants took any employment actions against because of any protected activities.  When questioned about the basis for his claim for retaliation, Plaintiff testified: "The claim is the recording that was sent to you folks from my attorney."[50]  The tape recording referenced by Plaintiff is of a conversation that took place on December 3, 2016,[51] which is over three months after Plaintiff's employment at CEMD terminated on August 31, 2016.  Accordingly, nothing that took place during the conversation could have any effect on Plaintiff's employment with CEMD because the employer/employee relationship ceased many months prior and Plaintiff was employed by KONE when this conversation occurred.  Further, in the conversation, Hellman discussed how he wanted to assist Plaintiff with succeeding in his new role with KONE. Hellman's offer of assistance is not the adverse employment action required to state a claim for retaliation. *See Torres*, 628 F. Supp. 2d at 472.

Therefore, Plaintiff's eighth and ninth causes of action fail as a matter of law.

---

[49] See Nasis Dec., Exhibit A, SAC at ¶¶154-165.
[50] *See* Nasis Dec., Exhibit I, Plaintiff Tr. at 321:11-12.
[51] *See Id*. at 322:3.

## IX.   **PLAINTIFF'S CLAIMS AGAINST ALONGIS ARE UNTIMELY.**

Even if this Court upholds any of Plaintiff's claims on summary judgment, Plaintiff cannot maintain a claim against Alongis, a former shareholder of CEMD. When questioned why Alongis was named as a Defendant in this action, Plaintiff acknowledged it was solely due to Alongis' role as a former shareholder in CEMD.[52]   However, Alongis' involvement in CEMD terminated in 2012 when he left CEMD and had his shares purchased by CEMD.[53]   Accordingly, Alongis' involvement with CEMD ceased before the time period covered by Plaintiff's claims.

Particularly, the statute of limitations for the FLSA (29 U.S.C.§255) (first, third, eighth causes of action) and conversion (CPLR §213) (sixth cause of action) is, at most, three-years. Therefore, Plaintiff may only seek recovery on these claims from January 4, 2014 -- two years after Alongis' interest and involvement with CEMD ceased.  As to Plaintiff's retaliation claim under the NYLL (ninth cause of action) this claim relates to an incident that allegedly occurred in December 2016, four years after Alongis left CEMD. Consequently, this claim must be dismissed against Alongis. The statute of limitations for Plaintiff's NYLL claims (NYLL §663(3)) (second, fourth and fifth causes of action) and unjust enrichment claim (CPLR §214(3)) (seventh cause of action) is six years, and, therefore, only covers the time period going back to January 4, 2011. Accordingly, any claim against Alongis under the NYLL or for unjust enrichment is limited to the period of January 4, 2011 until June 2012, when Alongis left CEMD. Because Plaintiff's first, third, sixth, eighth and ninth causes of actions are untimely, they must be dismissed against Alongis.  Further, for the reasons set forth herein, Plaintiff's second, fourth and fifth causes of action should be dismissed outright; however, if not dismissed, liability should be limited to the time period in which Alongis was actually a shareholder of CEMD.

---

[52] *See Id.* at 333:21-22.
[53] D. 56.1 at ¶19.

## X.    PLAINTIFF    TORTIOUSLY    INTERFERED    WITH    DEFENDANTS' CONTRACTS WITH EXISTING CUSTOMERS.

Defendants filed a counterclaim against Plaintiff for his tortious interference with CEMD's contracts. [Doc. No.  64].  Defendants are entitled to summary judgment on their counterclaim because they can demonstrate "proof of the existence of a valid contract, [Plaintiff's] intentional interference with performance and consequential damages suffered by [CEMD], a party to the contract."  *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 194, 406 N.E.2d 445, 450 (1980); *see also Wolff v. Rare Medium, Inc.,* 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001).

During the course of discovery, Plaintiff produced sixteen maintenance service contracts that he executed as a principal of Keystone.[54]  These 16 contracts were with customers who had existing contracts with CEMD.[55]  Although CEMD had assigned these customers' contracts to KONE, the terms of the APA provided that the sales price would be reduced for all contracts cancelled within a year of the sale.[56]  Accordingly, CEMD remained a third-party beneficiary to the maintenance contracts at issue, and, as such, CEMD has standing to assert a claim for tortious interference with these agreements. *See Debary v. Harrah's Operating Co.*, 465 F. Supp. 2d 250, 262 (S.D.N.Y. 2006), *aff'd sub nom. Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115 (2d Cir. 2008) (remarking that "it bears noting that New York state courts have long held that third-party beneficiaries of a contract may bring a claim for tortious interference with that contract.").

Notably, these 16 contracts were cancelled because of Plaintiff's tortious actions. Plaintiff initially negotiated and executed contracts with these customers when he was employed

---

[54] *See* Nasis Dec., Exhibit I, Plaintiff Tr. at 312:23-25; 313:1-25; 314:1-21; Keystone Contracts attached as Exhibit M to the Nasis Dec.; D. 56.1 at ¶122.
[55] Helman Aff at ¶41; D. 56.1 at ¶123; Nasis Dec., Exhibit P, APA at Schedule 1.01.
[56] Hellman Aff. at ¶43; D. 56.1 at ¶ 125; Nasis Dec., Exhibit P, APA at Section 3.02, pages 3-4.

by CEMD.[57]    Consequently, he was well aware of the scope and terms of these contracts. However, Plaintiff admitted during his deposition that while employed as a principal of Keystone, he recommended Keystone's services to CEMD's customers and they were persuaded to terminate their contracts with CEMD and sign with Keystone.[58]  Indeed, Plaintiff acknowledged that when a customer signed a service contract with Keystone, the customer was terminating their existing contract.[59]  Further, Hellman discussed the terms of the APA, including the clawback provision with Plaintiff; therefore, Plaintiff was aware that his tortious interference with reduce the asset sales price, damaging Defendants.[60]    As a result of these cancelled contracts, Defendants were damaged because the asset purchase price was reduced by a corresponding amount of no less than $360,000.[61]  Accordingly, judgment should be awarded in favor of Defendants on their counterclaim against Plaintiff.

## CONCLUSION

For the foregoing reasons Defendants respectfully request that their motion for summary judgment be granted in its entirety.

Dated: February 5, 2019
      Uniondale, New York

Respectfully submitted,

FORCHELLI DEEGAN TERRANA LLP
*Attorneys for Defendants/Counterclaimants*

By:   /s/ _____

        Elbert F. Nasis, Esq.
        Gregory S. Lisi, Esq.
        Lisa M. Casa, Esq.

---

[57] *See* Hellman Aff. at ¶43; CEMD's Confidential Service Contracts attached as Exhibit Q to the Nasis Dec.
[58] *See* Nasis Dec., Exhibit I, Plaintiff Tr. at 308:12-18.
[59] *See* Nasis Dec., Exhibit I, Plaintiff Tr. at 309:19-22.
[60] *See* Hellman Aff. at ¶43.
[61] *See* Hellman Aff. at ¶44.