UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

STEVEN TILCHEN,                                    :

                  *Plaintiff,*                          :

   *-against-*                                    :

CEMD ELEVATOR CORP. d/b/a CITY          :          17 Civ. 51 (PAC)
ELEVATOR, MITCHELL HELLMAN,              :
STEPHAN DIEMER, CARL ALONGIS, and       :
KONE, INC.,                                        :          **OPINION & ORDER**
                                                            :
               *Defendants.*                      :

------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

       Plaintiff Steven Tilchen, worked for Defendant City Elevator in a high-paying job from

2003 to 2016.  He sued City Elevator and its owners Mitchell Hellman, Stephan Diemer, and

former owner Carl Alongis (collectively "Defendants"), alleging violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; New York Labor Law ("NYLL"); for

unlawful wage deductions; failure to pay earned commissions; failure to pay overtime; failure to

provide appropriate records; retaliation, as well claims under New York common law for unjust

enrichment and conversion.   Defendants assert a counterclaim for tortious interference of

contract.[1]

       On May 10, 2018, the Court approved a settlement agreement between Plaintiff and

Defendant Kone, and Kone was dismissed from the litigation with prejudice. (Dkt. 83.)  The

remaining Defendants filed their motion for summary judgment on February 5, 2019.  (Dkt.

---

[1] Plaintiff filed the Second Amended Complaint on July 31, 2017, (Dkt. 54), and Defendants filed their Amended
Answer with Counter-claims for tortious interference on September 7, 2017. (Dkt. 64.)

121.) Plaintiff filed a motion for summary judgment as to the tortious interference claim on February 5, 2019. (Dkt. 116.)

For the following reasons, the Court GRANTS Defendants' motion for summary judgment. The remaining state law claims and Defendants' state law counterclaim are dismissed without prejudice.

## FACTUAL BACKGROUND

### I.     The Parties

Defendant City Elevator ("CEMD") is an elevator servicing and installation company. (Nasis Ex. D at 34:2-5.) CEMD primarily sold three types of contracts: (1) service contracts, which covered routine elevator maintenance; (2) construction and modernization contracts, which covered the installation and replacement of elevators; and (3) repair contracts, which covered individual repairs. (*See* Hellman Aff. ¶ 8.)

Plaintiff, Steven Tilchen is a former employee of CEMD. (Nasis Ex. I at 40:21-41:11.) Plaintiff worked at CEMD in a high-paying job for thirteen years from 2003 until 2016 when Kone[2], an elevator service company, purchased CEMD's assets. (*Id.*)

### II.    Plaintiff's Duties at CEMD

In 2003, Plaintiff joined CEMD as the Director of Sales and he later held the title Vice President of Sales. (Nasis Ex. I at 27:1-17.) While at CEMD, Plaintiff's duties included negotiating with CEMD's customers, meeting clients to understand their needs, handling client relations, determining whether client problems were covered under agreements with CEMD, coordinating with departments within CEMD to ensure completion of work, following up with

---

[2] As discussed, *supra*, Kone was dismissed from the litigation. (*See* Dkt 83.)

internal stakeholders to determine that work was completed, and reviewing invoices.[3]  (56.1

Stmts. ¶¶ 81-86; Nasis Ex. I at 103:113-115; *id.* at 109:13-23.)  Plaintiff testified that as a result

of his role he was tied to the office "90 to 95%" of the time.  (Nasis Ex. I at 103:12-18.)

**III.     Plaintiff's Compensation**

   While at CEMD, Plaintiff earned in excess of $100,000 annually throughout the relevant

period.  (*See* Nasis Ex. K.)  Plaintiff was compensated in the form of salary and additional bonus

compensation.  (*Id.*)  The additional compensation varied over the thirteen years, but paystubs

reflect that approximately half of Plaintiff's compensation was labelled as "bonus" payments.

(*Id.*)  It is not disputed that another salesperson who worked at CEMD, from 2012 through 2016,

received compensation for sales on a commission basis.  (56.1 Stmts. ¶ 106; Nasis Ex. G at 13:5-

19.)  This salesperson received a written commission plan and was required to submit

commission statements detailing his sales to receive commissions.  (Nasis Ex. G at 11:12-22;

13:9-19.)  Before CEMD paid commissions to this salesperson, superiors and the accounting

department had to verify the information provided in the salesperson's commission statement.

(*Id.*)  Plaintiff, however, never submitted a commission statement to receive the "bonus"

compensation he was paid during the thirteen years he worked for CEMD.  (Nasis Ex. I at 229:6-

19.)

   In 2016, as CEMD prepared to sell assets to Kone, Plaintiff approached Defendant

Hellman about commissions he believed he was owed.  (*See* Brecher Decl. In Supp. of Pl.'s

Opp'n Ex. 9 at CEMD E000006 (hereinafter Brecher Opp'n)).  Emails reflect that Plaintiff

provided Defendant Hellman with a figure of $1,350,000 which he believed he was owed in

commissions for contracts he sold while at CEMD.  (*See* Brecher Opp'n Ex. 9 at CEMD

---

[3] According to Plaintiff, "[he] carried this guy's [Hellman] business for fourteen years." (Nasis Ex. I, at 168:19-23.)

E000008.) Defendant Hellman instructed Plaintiff to create a commission statement for those commissions. (*Id.*) Subsequently, Defendant Hellman emailed Plaintiff saying "[o]nce we close there will be time to go through total, reconcile your commissions and settle up. Don't forget we are on the honor system…[w]e don't have a contract, we have some scratch on a sticky note." (*See* Brecher Opp'n Ex. 9 at CEMD E000005.)

## A. The "Sticky Note"

Plaintiff alleges that he "never received a written commission agreement from Defendants" and that the method for earning commissions was communicated by Defendant Hellman. (SAC ¶¶ 82, 83.) Nevertheless, Plaintiff now bases his claims on a handwritten note that was created during a meeting between Defendant Hellman and Plaintiff prior to Plaintiff's employment in 2003. (Pl. Opp'n at 2, Dkt 131.) The parties dispute what the handwritten note referenced. (56.1 Statements ¶¶ 37, 40.) The unsigned, handwritten note lists "1,350 per week salary" and "150 per week for car allowance." (Nasis Ex. J.) The note also lists the following information: "Maint 8% up to plan, 5 yrs extra 2%, every year after addition 1%," "Repairs 3% up to plan, 6% over plan" and "Mod/NI" "1% up to plan, and 2% over plan." (*Id.*) Plaintiff testified that the percentages in the handwritten note referenced a sales plan, which Plaintiff "never saw" and "never" discussed with Defendant Hellman in the thirteen years he worked at CEMD. (*Id.* Ex. I at 193:7-18.) Plaintiff further testified that "there was never any conversation about any sales plan," but that he thought he would "eventually receive a plan." (*Id.* Ex. I at 201:3-13; 203:3-8.)

## IV. Defendants' Asset Sale to Kone

Plaintiff's employment with CEMD ended when Kone purchased CEMD's assets. (Nasis Ex. I at 338:9-14.) Plaintiff was employed by Kone from September 1, 2016 until January 9,

2017. (*Id.* at 405:13.) The terms of the sale between CEMD and Kone were incorporated in the Asset Purchase Agreement ("APA"). (*See* Nasis Ex. P.)  As part of the sale, CEMD assigned at least 276 elevator contracts to Kone. (*See id.;* Brecher Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. 2 at KONE00082-89.)  The APA provided that CEMD would be responsible for contracts cancelled within the first year of the sale to Kone. (*See* Nasis Ex. P.)

After departing from CEMD, Plaintiff continued to contact Defendant Hellman. (*See* Nasis Ex. N at 2:3-13.)  Plaintiff's lawyer sent a letter, dated November 17, 2016, to Defendants regarding Plaintiff's claims for unpaid wages and his intention to commence a lawsuit. (*See* Brecher Ex. 13.)  On December 3, 2016, Plaintiff and Defendant Hellman met in a parking lot; Plaintiff surreptitiously recorded the conversation. (*See* Brecher Ex. 13; 56.1 Stmts. ¶¶ 126, 127.)  In that recorded conversation, Defendant Hellman told Plaintiff, "there's basically two ways things could go.  Take a step back and I'll do my best to help you. If you go this way you put me in a really bad [] position where I can't help you." (Nasis Ex. N at 2:22-25; 3:1-3.) Plaintiff filed suit on January 4, 2017. (*See* Compl., Dkt 1.)

V.    **Plaintiff Joins Keystone**

In January 2017, Plaintiff left Kone and joined Keystone Iron & Wire Company ("Keystone"), another elevator service company, as a principal.  While Plaintiff was working for Keystone, former customers of CEMD/Kone initiated discussions with Plaintiff complaining about Kone's service, and Plaintiff recommended Keystone's services. (Nasis Ex. I at 308:2-11.) Of the 276 contracts that CEMD assigned to Kone, 91 contracts were cancelled in the one-year period following the asset purchase. (*See* Brecher Decl. in Supp. of Pl.'s Mot. for Summ. J. Ex. 34.)  While Plaintiff worked for Keystone during that one-year period, Keystone executed fifteen contracts with customers who previously had contracts with CEMD that had been assigned to

Kone. (Nasis Ex. M.) According to one of those fifteen customers, while they were satisfied with the service at CEMD they cancelled their contract assigned to Kone because of Kone's failure to perform. (Teves Decl. ¶¶ 5, 8, 9.)

## DISCUSSION

### I.      Summary Judgment Standard

Summary judgment is appropriate "upon a showing 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 50 (2d Cir. 2009).

The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)).

### II.     Liability

#### A.   No FLSA Claim for Unpaid Wages (Claim 1)

Plaintiff does not oppose Defendant's motion for summary judgment regarding liability for unlawful deductions under the FLSA. Accordingly, Plaintiff's claims for unlawful deductions are deemed abandoned. *See e.g., Henry v. Metro. Transp. Auth.*, No. 07 CIV. 3561

DAB, 2014 WL 4783014, at *12 (S.D.N.Y. Sept. 25, 2014).  Defendant's motion is GRANTED with respect to this claim.

### B.  No Contractual Right to Commissions (Claim 2)

Plaintiff contends that an unsigned, handwritten note constitutes a written "commission schedule" and the "functional equivalent" of an offer letter.  (Pl. Opp'n at 2.)  Defendants argue that the handwritten note referenced a commission plan that Plaintiff had with his former employer, and that the note is at best an unenforceable "agreement to agree."  (Defs. Mot. at 4, 7.)

In order "to assert any substantive claim for wages under article 6 [of the NYLL], a plaintiff must have an enforceable contractual right to those wages."  *Gallegos v. Brandeis Sch.*, 189 F.R.D. 256, 259 (E.D.N.Y. 1999).  In New York, a contract must be sufficiently "definite" to be enforceable.  *Dreyfuss v. eTelecare Glob. Sols.-US, Inc.*, No. 08 CIV. 1115 (RJS), 2008 WL 4974864, at *4 (S.D.N.Y. Nov. 19, 2008), *aff'd*, 349 F. App'x 551 (2d Cir. 2009).  Where "essential terms of an agreement are omitted or are phrased in too indefinite a manner, no legally enforceable contract will result."  *Brookhaven Hous. Coal. v. Solomon,* 583 F.2d 584, 593 (2d Cir. 1978).  "Price or compensation are material terms in a contract requiring definiteness."  *Major League Baseball Props., Inc. v. Opening Day Prods., Inc.,* 385 F. Supp. 2d 256, 271 (S.D.N.Y.2005).  Courts may not calculate compensation without custom and usage evidence establishing an extrinsic standard which is "fixed and invariable" in the industry in question.  *Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.*, 581 N.Y.S.2d 50 (1992); *accord Foros Advisors LLC v. Digital Globe, Inc.*, 333 F. Supp. 3d 354, 361 (S.D.N.Y. 2018).

Here, even viewing the handwritten note in the light most favorable to Plaintiff, it is unenforceable as a matter of law because it fails to embody essential terms of a complete

agreement and there is no extrinsic fixed standard to calculate compensation. *Brookhaven*, 583 F.2d at 593; *Foros*, 333 F. Supp. 3d at 361. Nothing in the handwritten note suggests the parties intended to be bound. Indeed, Plaintiff concedes that he "never received a written commission agreement from Defendants" and that the method for earning commissions was communicated by Defendant Hellman. SAC ¶¶ 82, 83.[4] Further, the unsigned, handwritten note is missing essential terms of an employment contract under New York law, such as the identity of the parties to be bound, the terms of employment, the commencement date or duration. *See Durso v. Baisch*, 830 N.Y.S.2d 327, 328 (2007).

Even if the Court could determine the meaning of the ambiguous terms in the handwritten note by reference to trade usage such as, "Maint" 8% up to plan" and "Mod/NI" "1% up to plan" there is no objectively definite method or fixed formula to calculate—material terms—compensation allegedly owed to Plaintiff. *Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.*, 581 N.Y.S.2d 50 (1992). According to Plaintiff, "plan" referred to a sales plan that he "never saw" and "never" discussed with Defendant Hellman in the thirteen years he worked at CEMD. *E.g., Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06 CIV. 5474 (JGK), 2008 WL 857492, at *15 (S.D.N.Y. Mar. 31, 2008) ("New York courts also will not give contractual effect to vague generalizations about compensation."). Thus, because the unsigned, handwritten note plainly leaves open material terms and there is no way for the Court to fill in the missing terms with reference to an objective standard it is merely an "agreement to agree" and cannot be enforced.[5]

---

[4] The Court rejects Plaintiff's attempt to plead the existence of a written commission agreement in his opposition brief. *Brown v. Magistro*, No. 10-CV-3705 CS PED, 2011 WL 6399514, at *3 (S.D.N.Y. Dec. 20, 2011).

[5] Plaintiff's course of dealing argument fails for the same reason.

Accordingly, Defendants' motion for summary judgment is GRANTED as to liability for unpaid commissions.

## C.   Not Entitled to Overtime Wages (Claims 3 & 4)

Plaintiff seeks unpaid overtime under FLSA and NYLL.  Defendants argue Plaintiff was exempt from overtime compensation under the highly compensated employee exemption.

The FLSA provides numerous exemptions to the time-and-a-half overtime requirement, one of which is the "highly compensated employees" exemption.  29 C.F.R. § 541.601 (2013).[6] To qualify for the highly compensated employee exemption, under FLSA or NYLL, an employee must: (1) have total annual compensation of at least one hundred thousand dollars ($100,000); (2) "customarily and regularly perform *any one or more* of the exempt duties or responsibilities of an executive, administrative, or professional employee"; and (3) have a "primary duty that *includes* performing office or non-manual work." *Bellone v. Kraft Power Corp.*, No. 15CV3168SJFAYS, 2016 WL 2992126, at *4 (E.D.N.Y. May 23, 2016); *see also Anani v. CVS RX Servs., Inc.*, 730 F.3d 146, 149 (2d Cir. 2013).

With respect to salary, determining an employee's total annual compensation may include commissions.  *Siji Yu v. Knighted LLC*, No. 15-CV-9340 (KMK), 2019 WL 2085990, at *5 (S.D.N.Y. May 13, 2019).  "A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." *Id.* at *6.  With respect to the second and third factors, an employee meets the "exempt duties" requirement if he or she regularly performs duties that fall under the executive, *administrative*, or

---

[6] The NYLL mandates overtime pay at the same rate as the FLSA and applies the same exemptions. *See e.g.*, *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010).

professional employee *exemptions* and has a primary duty[7] that includes performing office or non-manual work. *See* 29 C.F.R. § 541 (emphasis added). To qualify under the administrative employee exemption, an employee's primary duty must involve the performance of work directly related to the general business operations of his employer *or the employer's customers*, which includes "work performed by so-called white-collar employees engaged in 'servicing' a business as, for, example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." *Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 704 (S.D.N.Y. 2005); *See* 29 C.F.R. § 541.205(c).

Plaintiff qualifies under the highly compensated employee exemption. He earned well in excess of $100,000 annually during his employment. (*See* Nasis Ex. K.) In light of Plaintiff's salary there is no need to do a detailed analysis of his duties. *Knighted LLC*, 2019 WL 2085990, at *6. Plaintiff's duties qualify him under the administrative employee exemption. Like the plaintiff in *Schwind*, Plaintiff was engaged in an administrative capacity; his duties were far more extensive than just sales, and included negotiating with CEMD's customers, meeting clients on site to understand their needs, handling client relations, determining whether client problems were covered under agreements with CEMD, coordinating with departments within CEMD to ensure completion of work, following up with internal stakeholders to determine that work was completed, and reviewing invoices.[8] (Hellman Aff. ¶¶ 26, 27; Nasis Ex. I at 103:113-115; 109:13-23.) *See Knighted LLC*, 2019 WL 2085990 at *8 (dealing with customer problems, maintaining

---

[7] Employees who "spend more than fifty percent (50%) of their time performing exempt work will generally satisfy the primary duty requirement." *Sorrentino v. Stephen P. Esposito, M.D., P.C.*, No. CV-08-1870 (SJF), 2010 WL 11627323, at *3 (E.D.N.Y. Jan. 7, 2010) (citing 29 C.F.R. § 541.700(a)).

[8] According to Plaintiff, he "carried this guy's business for fourteen years," reflecting that his work was directly related and of substantial importance to general business operations. (Nasis Ex.I at 168: 19-23.)

customer relationships, and helping clients use [CEMD's] system fall within the administrative exemption). As to the third factor, there is no dispute that Plaintiff's primary duty consisted of office or non-manual work. Because Plaintiff's employment with CEMD meets all three factors of the highly compensated employee exemption analysis, Defendants are entitled to summary judgment.

Accordingly, Defendants' motion for summary judgment on the overtime claims is GRANTED.

### D. Retaliation (Claims 8 and 9)

The FLSA and NYLL retaliation provisions are "nearly identical" and analyzed under the same framework. *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 471 n. 18 (S.D.N.Y. 2008). To establish a *prima facie* case of retaliation, plaintiff must allege (1) participation in protected activity known to the defendant; (2) an adverse employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *See Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010). The burden of proof at the *prima facie* stage is *de minimis. See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). If the plaintiff meets this burden, the defendant must offer a legitimate non-retaliatory reason for its actions. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). If the defendant puts forth such a reason, the plaintiff must demonstrate that there is sufficient evidence for a reasonable juror to find that the reason offered by the defendant is mere pretext for retaliation. *See Weinstock,* 224 F.3d at 42.

Defendants do not dispute that the letter sent by Plaintiff's lawyer on November 17, 2016 (post-termination) outlining Plaintiff's claims and intention to sue constitutes protected activity.[9] Defendants, however, submit that Plaintiff was not subjected to any adverse employment action because Plaintiff did not work for CEMD at the time; he worked for Kone.[10] Defendants provided a legitimate explanation for not paying the commissions, which is that they determined Plaintiff was not entitled to the commissions. *See Crowe v. Harvey Klinger, Inc.*, No. CV 16-12033-JGD, 2018 WL 6819329, at *12 (D. Mass. Dec. 27, 2018) (applying New York law). Plaintiff argues that Defendant Hellman indicated a willingness to pay commissions only if Plaintiff did not pursue litigation in a conversation recorded surreptitiously two weeks after receiving the letter. In that recorded conversation, Defendant Hellman told Plaintiff, "there's basically two ways things could go. Take a step back and I'll do my best to help you. If you go this way you put me in a really bad [] position where I can't help you." (Nasis Ex. N 2:22-25; 3:1-3.) Plaintiff has not shown Defendant's reason for not paying commissions was pretextual. There is no retaliation because Plaintiff was beyond CEMD's and Hellman's power. Further, Plaintiff has failed to prove a causal connection between the protected activity and the purported adverse employment action because Defendants had not paid the commissions when Plaintiff requested, which was six months before Plaintiff filed the letter regarding the lawsuit.

---

[9] The FLSA does not restrict its protections to employees who file formal complaints with government agencies; the statute can in certain circumstances encompass written or oral complaints made to the employer. *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 115 (2d Cir. 2015) (citing 29 U.S.C. § 215(a)(3)).

[10] Defendants argue no adverse action could have occurred because Plaintiff was terminated prior to the alleged adverse employment action. District courts in this Circuit have found that "in some instances plaintiffs can bring retaliation claims against former employers for post-employment conduct." *Jian Zhong Li v. Oliver King Enters, Inc.*, No. 14-CV-9293 VEC, 2015 WL 4643145, at *3 (S.D.N.Y. Aug. 4, 2015). But these circumstances are "relatively narrow." *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 114 (S.D.N.Y. 2015). Plaintiff has not shown that such circumstances are applicable.

*See Pickett v. Baldwin Union Free Sch. Dist.*, No. 13-CV-3527(JS)(AYS), 2016 WL 1714928, at

*3 (E.D.N.Y. Mar. 21, 2016) ("It is clear that '[t]here can be no inference of retaliatory animus

where the adverse employment action occurred prior to the protected activity.' ")

 Accordingly, Defendants' motion for summary judgment is GRANTED as to the

retaliation claims under the FLSA and NYLL.

 **E.**  **Other State Law Claims –Recordkeeping (Claim 5), Unjust Enrichment (Claim 6), and Conversion (Claim 7) and Counterclaim for Tortious Interference**

 Plaintiff's remaining claims of New York labor law violations, unjust enrichment, and

conversion do not invoke any federal questions.  Nor does Defendants' counterclaim for tortious

interference of contract.  Therefore, the Court considers whether to exercise supplemental

jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a), which grants federal

courts jurisdiction to decide claims if those claims arose from the same common nucleus of

operative fact.  In deciding whether to exercise supplemental jurisdiction, § 1367(c) lists several

factors a court may consider.  *See* 28 U.S.C. § 1367(c).  A district court should decline to

exercise supplemental jurisdiction if: (1) the state claim raises a novel or complex issue of state

law; (2) the state claim substantially predominates over the claim over which the court has

original jurisdiction; (3) the district court has dismissed all claims over which it had original

jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining

jurisdiction. *Seabrook v. Jacobson*, 153 F.3d 70 (2d Cir. 1998).  Courts deciding whether to

retain jurisdiction under § 1367(c)(3) consider judicial economy, convenience, fairness, and

comity.  *Kolari v. N.Y.–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

 The Court has dismissed all claims over which it had original jurisdiction.  The Court

declines to exercise supplemental jurisdiction over the remaining state law claims.  The Court

has not spent considerable time or resources looking at the merits of the remaining state law claims and believes that New York state courts are better suited to address questions of New York labor law violations. *Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) ("[O]ur Court has held, as a general proposition, that 'if [all] federal claims are dismissed *before trial* ..., the state claims should be dismissed as well.' " (emphasis in original) (quoting *Castellano v. Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir. 1991)).  Judicial economy and comity favor having the parties pursue its remaining state law claims in state court where those claims will be afforded a "surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

  Accordingly, Plaintiff's Fifth, Sixth, and Seventh claims and Defendants' counterclaim for tortious interference are dismissed without prejudice.

## CONCLUSION

  For the following reasons, the Court GRANTS Defendants' motion for summary judgment, Dkt. 121.  The motion is GRANTED as to Plaintiff's claims for unlawful wage deductions (claim 1), failure to pay earned commissions (claim 2), failure to pay overtime (claims 3 and 4), and retaliation (claims 8 and 9).  Plaintiff's remaining state law claims and Defendant's state law counterclaim are dismissed without prejudice.

  The Clerk of the Court is directed close the motions at Dkt. 121 and Dkt. 116 and close the case.

Dated: New York, New York
   September 24, 2019

SO ORDERED

*Paul A Crotty*

PAUL A. CROTTY
United States District Judge